UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AUTUMN YENNARD,

                          Plaintiff,                    6:16-CV-0556
                                                        (GTS/ATB)
v.

HERKIMER BOCES; SARA NICOLETTE, Adult
Vocational Nursing Programs Coordinator;
LESA STEELE, Nursing Instructor; and MARY
KLINE, Dir. of Adult and Cmty. Outreach Educ.,

                          Defendants.
_____

APPEARANCES:                                     OF COUNSEL:

SADOWSKI KATZ LLP                                RAPHAEL KATZ, ESQ.
  Counsel for Plaintiff                          ROBERT W. SADOWSKI, ESQ.
11 Broadway, Suite 615
New York, NY 10004

OFFICE OF FRANK W. MILLER                        CHRISTOPHER MILITELLO,
                                                 ESQ.
  Counsel for Defendants
6575 Kirkville Road
East Syracuse, NY 13057

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, in this disability discrimination action filed by Autumn

Yennard ("Plaintiff") against Herkimer BOCES, Sara Nicolette, Lesa Steele, and Mary Kline

(collectively, "Defendants"), are Defendants' motion for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c) (Dkt. No. 21), and Plaintiff's cross-motion for leave to file an Amended

Complaint pursuant to Fed. R. Civ. P. 15(a) (Dkt. No. 30).  For the reasons set forth below,

Defendants' motion is granted in part and denied in part, and Plaintiff's cross-motion is granted

in part and denied in part.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Complaint

Generally, in her Complaint, Plaintiff alleges as follows.  (Dkt. No. 1 [Plf.'s Compl.].)

### 1. General Background Regarding Plaintiff

Plaintiff suffers from bipolar disorder, a "lifelong illness" defined by "[e]pisodes of mania and depression" that "typically come back over time."  (*Id.* at ¶¶ 15, 17.)  Common symptoms experienced by individuals with bipolar disorder (which is also sometimes referred to as "manic depression") include "[d]epressed mood," "[p]oor concentration or having difficulty making decisions," and "[t]hinking about death or suicide."  (*Id.* at ¶ 16.)  Plaintiff was diagnosed with bipolar disorder eight or nine years before she commenced this action, and receives "regular counseling by a psychotherapist to improve her organization, communication and socialization skills."  (*Id.* at ¶ 18.)

In the fall of 2014, Plaintiff was accepted into the Licensed Practical Nurse ("LPN") program offered by Herkimer Board of Cooperative Educational Services ("BOCES").  (*Id.* at ¶ 19.)  At the start of the 2014-15 school year, "Plaintiff's disability was clearly disclosed [and] documented on her physical examination forms."  (*Id.* at ¶ 20.)  To assist in ensuring that Plaintiff succeeded in the program, she worked with Marguerite Pywar ("Pywar"), a vocational rehabilitation counselor from the New York State Education Department Office of Adult Career and Continuing Education Services ("ACCES-VR").  (*Id.* at ¶ 21.)

### 2. May 2015 Incident and Plaintiff's Discharge from the LPN Program

In May 2015, Plaintiff and her classmates "attended a clinical class at" a nursing home.  (*Id.* at ¶ 22.)  During a discussion after the clinical class, Plaintiff commented that one of the other students' care plan was "good" because "the teacher had provided that student with extra

help." (*Id.* at ¶ 22.) In response, another student commented to Plaintiff, "Snitches get stitches."

(*Id.*) Plaintiff replied, "so when we get back to class[,] someone is going to get stitches [meaning

Plaintiff]." (*Id.*) After this exchange, the clinical instructor called Defendant Sara Nicolette,

BOCES' Adult Vocational Nursing Programs Coordinator ("Nicolette"), reported Plaintiff's

comment, and "accused her of threatening the entire class with that comment." (*Id.*) As a result

of this "baseless allegation," Nicolette "commenced her campaign against Plaintiff and

unreasonably discharged [her] from the LPN program." (*Id.* at ¶ 23.) Nicolette informed

Plaintiff that "the discharge was due to an alleged failure in [her] clinical session and unspecified

conduct," despite the fact that Plaintiff's grades were "good" and the alleged conduct was never

documented. (*Id.*) Plaintiff "appealed the discharge decision" and "requested implementing a

behavior plan that would allow her to finish" the school year. (*Id.* at ¶ 25.)

### 3. Plaintiff's Readmission to the LPN Program

On June 22, 2015, Nicolette informed Plaintiff that she could be readmitted to the LPN

program if she did the following things: (1) "[o]btain counseling as appropriate to deal with

identified issues . . ."; (2) "[c]omplete the BOCES LPN medical form . . ."; and (3) [a]pply for

readmission for the Fall of 2016 program." (*Id.* at ¶ 24.) At some point, Plaintiff contacted

Disability Rights New York ("DRNY"), and, on October 13, 2015, Kathryn Robertson, a staff

attorney with DRNY, wrote to an attorney for BOCES and "complain[ed] that[,] having been

admitted to [BOCES] as a qualified individual with a disability under the ADA, Plaintiff should

not have to reapply for admission." (*Id.* at ¶ 27.) On October 14, 2015, BOCES readmitted

Plaintiff to the LPN program. (*Id.* at ¶ 28.)

On January 5, 2016, Plaintiff was provided with certain accommodations in a written agreement signed by Plaintiff, Pywar, Nicolette, and Defendant Mary Kline, BOCES' Director of Adult Community and Outreach Education ("Kline").  (*Id.* at ¶¶ 12, 14, 30.)  The "agreed reasonable accommodations" included the following: (1) that Plaintiff would "receive 'Classroom Quick Check' and 'Clinical Quick Check Level II' forms completed on days [that] she ha[d] interaction with the clinical instructor"; (2) that ACCES-VR would be "notified of any concerns as they arise . . ."; (3) that "communications between [BOCES and its] representatives and [Plaintiff] remain related to learning and issues directly impacting her educational outcome," and that "[a]ny other concerns . . . be addressed with the assistance of ACCES-VR"; (4) that BOCES would "provide weekly updates to ACCES-VR relating to academic and professional progress via email"; and (5) that "[r]easonable accommodations will be developed throughout this process as needed with the assistance of ACCES-VR."  (*Id.* at ¶ 30.)

### 4.     Intensive Care Unit Clinical Session

In January 2016, Plaintiff resumed classes and began a "virtual lab" at a hospital intensive care unit that used mannequins as patients.  (*Id.* at ¶ 31.)  Plaintiff was to receive "reasonable accommodations" during these clinical training sessions, including daily feedback from instructors (i.e., "quick checklists" that BOCES "had already agreed would be a reasonable accommodation for [her] disability").  (*Id.*)  The purpose of this accommodation was to allow Plaintiff to "correct any issue during clinical sessions in lieu of being bombarded with errors at the end of the session, which would create and trigger tension and depression."  (*Id.*)  Plaintiff failed her "clinical session" in 2015 as a result of BOCES' failure "to abide by the agreed reasonable accommodation of quick checklists on a daily basis." (*Id.*)

Nicolette and another instructor met with Plaintiff–without Pywar present–and advised her that her "nursing skills were not up to standard" and that she "needed to make videos of her nursing skills" and submit them for evaluation. (*Id.* at ¶ 32.) Plaintiff made and submitted the videos, but she did not receive a passing score and was placed on "clinical probation." (*Id.* at ¶¶ 32, 34.)

### 5. St. Luke's Hospital Clinical Session

On January 30, 2016, Plaintiff and four other students were assigned to perform "an observational, maternal and baby clinical session" at St. Luke's Hospital in Utica, New York. (*Id.* at ¶ 35.) During the session, the instructor, Defendant Lesa Steele ("Steele"), discussed "infant deaths, . . . some photographs, and pamphlets to educate mothers." (*Id.*) Steele also discussed "mothers who give birth when addicted to drugs." (*Id.*) During a break, Plaintiff asked Steele if Plaintiff "could make a telephone call because her child was ill and [her] mother had tried to reach [her] three times." (*Id.*) Steele "said that was fine." (*Id.*)

At the conclusion of the session, Steele filled out "observation sheets" for each student. (*Id.*) Plaintiff "received all positive checkmarks for her performance," including that St. Luke's "would accept this student for a future independent clinical session." (*Id.*) However, in the "comments section" of Plaintiff's observation sheet, Steele wrote the following: "Asks inappropriate questions regarding drugs–adoption–CPS [child protective services]. Had to reel her in & have her focus on real Pt opportuni [*sic*] [illegible] little too chatty @ X's & little inappropriate had to speak about her phone on her person during clinical." (*Id.* [emphasis omitted].)

### 6. February 2016–Meeting with Nicolette

On February 9, 2016, Plaintiff and Pywar met with Nicolette and another instructor who attended to take notes. (*Id.* at ¶ 36.) During the meeting, Pywar "confirmed an earlier conversation with Nicolette that there were no concerns with Plaintiff's performance in the classroom or at her clinical sites." (*Id.*) Moreover, Nicolette told Plaintiff that her "video presentation documenting proficiency in her skills was acceptable," and complimented Plaintiff for "work[ing] hard to accomplish the assignment." (*Id.* at ¶ 36.)

With respect to her clinical session at St. Luke's Hospital, Nicolette advised Plaintiff for the first time that, according to Steele, Plaintiff had asked "inappropriate" questions during the session. (*Id.* at ¶ 38.) Nicolette explained to Plaintiff and Pywar that, when Nicolette asked Steele for more information, Steele reported that Plaintiff "stated that she wanted another child, that she failed to conceive, . . . had attempted adoption without success, and that she knew a drug addicted mother who gave birth to a baby." (*Id.*) Based on her observations of Plaintiff during the session, Steele reported to Nicolette that Plaintiff "raised enough red flags for concern that Steele would not advise Plaintiff to work in the community with infants," and that Steele "had changed the clinical routine and did not take the students where sick infants are cared for because of her fear that Plaintiff was considering abducting an infant." (*Id.*) Steele also reported that, in response to Plaintiff's behavior, she "did not take the students to the nursery"; but, in actuality, "the students made five trips to the nursery during that clinical session." (*Id.*) Nicolette provided Plaintiff and Pywar "with a booklet on child abduction." (*Id.*)[1] Nicolette

---

[1]     Nicolette also produced to Pywar an e-mail message from Steele, dated February 11, 2016 (i.e, 10 days after the clinical session). (*Id.* at ¶ 38.) In the e-mail message, Steele stated that, based on her experience "in OB Nursing since 1989" and her familiarity with

advised Plaintiff that she could finish her clinical rotation because she "was being watched

there," but would not be permitted to participate in her next rotation, which was "at a daycare

center." (*Id.* at ¶ 39.) Instead of attending the next rotation, Nicolette "directed Plaintiff to

report to school, sit in a classroom[,] and study while all other students were at their clinical

sites." (*Id.*) Moreover, Nicolette "directed Plaintiff, [Pywar], and Plaintiff's mental health

counselor to submit a formal response." (*Id.*)

Nicolette's revelation of Steele's concerns related to Plaintiff's behavior during the

clinical session "shocked Plaintiff and triggered extreme stress." (*Id.* at ¶ 38.) Plaintiff denied

having said "anything that Steele reported" except with regard to the use of her cell phone, which

Steele had expressly permitted. (*Id.*) Pywar asked "if there were any witness that she could talk

to" regarding the events at St. Luke's Hospital, and Nicolette "denied the request." (*Id.*)

On February 17, 2016, Pywar e-mailed Nicolette, asking whether "another student

[could] help Plaintiff with her clinical skills." (*Id.* at ¶ 44.) ACCES-VR also offered to "pay for

a tutor," but Nicolette did not respond to Pywar's e-mail. (*Id.*)

On February 22, 2016, Pywar wrote to BOCES' Adult Practical Nursing Program that, in

her opinion, Plaintiff "continues to be appropriate for [the] LPN program and is currently

meeting academic standards." (*Id.* at ¶ 40.) Pywar opined that Plaintiff "has attended the same

clinical experiences in the past and has shown no behavior to lead me to believe that she is

anything but an inquisitive student. Inquisitive behavior does not constitute fitting the guidelines

---

"policies and procedures regarding abduction behavior warning signs," she "would not
recommend [Plaintiff] to have further exposure to newborns and would advise [Nicolette to] take
careful consideration as to where [Nicolette] place [Plaintiff]." (*Id.*) Steele also attached to the
e-mail a file titled "newborn abduction," consisting of "current reference material from the
[National Center for Missing and Exploited Children]." (*Id.*)

of a typical child abductor. She has been a very dedicated student and works hard . . . ." (*Id.*) On February 26, 2016, Pywar asked Nicolette whether Plaintiff would be permitted to attend "the clinical observation for Head Start," and Nicolette responded, "It will not happen. She did it last year [and] that will count." (*Id.* at ¶ 44.) Despite the "false accusation" against Plaintiff, "every qualified mental health professional who knows and works with [her] completely disagreed with the contrived and malicious accusation against" her. (*Id.*)

### 7. Plaintiff's Dismissal from BOCES

In March 2016, Plaintiff participated in a clinical session at Little Falls Hospital. (*Id.* at ¶ 45.) Despite the fact that Plaintiff "performed well," the instructor subjected her to "extreme supervision" and "hovered over" her, making her "nervous." (*Id.*) Plaintiff asked the instructor "for help and for her daily checklist" so that she could study it, but the instructor advised her that she would receive the checklist the next day, "contrary to [Plaintiff's] plan for accommodation." (*Id.*) Thereafter, the instructor "reported to Nicolette, who lowered Plaintiff's daily grade." (*Id.*) "Ultimately, Nicolette ensured that Plaintiff would fail her clinical requirements and be dismissed from the program." (*Id.*)

Plaintiff "appealed" her dismissal, and she, her husband, and Pywar (by telephone) met with Nicolette. (*Id.* at ¶ 46.)[2] During the meeting, Plaintiff's husband explained that, contrary to the "accusation" made by Steele, Plaintiff's daughter was eight years old (rather than ten years old), he and Plaintiff "had never discussed adoption," and Plaintiff "could still have children" but "decided not to have more children." (*Id.*) However, Nicolette advised Plaintiff that the reason she "failed her clinical" was that she "did not prioritize patient[s'] problems, was unorganized[,]

---

[2] It is unclear to whom this "appeal" was made.

and did not utilize time wisely[.]" (*Id.*) Plaintiff was "surprise[d]" to learn this because these shortcomings had never been brought to her attention in the "perfunctory and useless" checklists that instructors had (only occasionally) provided to her. (*Id.*)

Plaintiff "appealed" her dismissal to BOCES' superintendent, and, thereafter, met with the superintendent, Nicolette, and Kline. (*Id.* at ¶ 47.) Plaintiff also filed a complaint with the "New York State Department of Education Office of Civil Rights," which "assigned an attorney" who "requested a mediation" with the superintendent. (*Id.*) The superintendent agreed to participate in mediation, but stated that "he was unaware of . . . Plaintiff's accommodation, did not understand it, and asked [her] and . . . Pywar to explain how the checklists were either not used or used improperly." (*Id.*)[3] Plaintiff was "surprised to learn that the superintendent" had not been informed of "the accusation . . . that she was considered a potential child abductor," and Nicolette "tried to make light of this slander" by characterizing Plaintiff's exclusion from clinical sessions at the daycare as a "precautionary measure." (*Id.* at ¶ 48.) At the conclusion of the meeting, the superintendent stated that there would be "a response to the appeal" in three weeks; but, to date, Plaintiff has not received such a response. (*Id.*)

In sum, "Plaintiff succeeded academically" and received "consistently good" grades. (*Id.* at ¶ 50.) However, "[a]s a result of the denial of the approved reasonable accommodation, Plaintiff struggled in clinical settings," received lower grades, and was "denied the same opportunity" afforded to non-disabled students–that is, to demonstrate her ability to succeed in the profession. (*Id.* at ¶¶ 52, 54.) Plaintiff "inquired and pled with the faculty, supervisors, [and]

_____

[3]     It is unclear whether the superintendent made these statements as part of Plaintiff's "appeal" and/or during a mediation session.

administration through all of the appeal process" to accommodate her disabilities as BOCES had "promised," but "[t]o no avail." (*Id.* at ¶ 57.)

### 8. Plaintiff's Claims

Based upon these factual allegations, Plaintiff asserts eleven claims: (1) a claim for discrimination pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("RA"), based on Defendants' denial of reasonable and necessary accommodations and failure to engage in the interactive process to consider Plaintiff's requested accommodations (*id.* at ¶¶ 79-85); (2) a claim for retaliation pursuant to section 504 of the RA (*id.* at ¶¶ 86-91); (3) a claim for retaliation pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") (*id.* at ¶¶ 92-97); (4) a claim for hostile learning environment pursuant to the RA (*id.* at ¶¶ 98-100); (5) a claim for hostile learning environment pursuant to the ADA (*id.* at ¶¶ 101-03); (6) a claim for disability discrimination pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") (*id.* at ¶¶ 104-06); (7) a claim for defamation (in the forms of both slander and libel) (*id.* at ¶¶ 107-09); (8) a claim for negligence (*id.* at ¶¶ 110-13); (9) a claim for breach of contract (*id.* at ¶¶ 114-120); (10) a claim for intentional infliction of emotional distress ("IIED") (*id.* at ¶¶ 121-23); and (11) a claim pursuant to 42 U.S.C. § 1983 for the "violation of [her] rights under the [U.S.] Constitution" (*id.* at ¶¶ 124-29).

### B. Parties' Briefing on the Pending Motions and Cross-Motion

### 1. Defendants' Memorandum of Law

Generally, in support of their motion for judgment on the pleadings, Defendants advance eleven arguments: (1) Plaintiff's retaliation, hostile educational environment, and discrimination claims pursuant to the ADA and RA must be dismissed because she has failed to allege facts

plausibly suggesting that her bipolar disorder qualifies as a "disability" under these statutes (that is, that it substantially limits her engagement in any life activities, or that she suffers any particular symptoms as a result of her bipolar disorder) (Dkt. No. 21, Attach. 7, at 6-9 [Defs.' Memo. of Law]); (2) Plaintiff's first claim (i.e., that BOCES failed to provide reasonable accommodations for her disability and/or to engage in the interactive process must be dismissed because she has failed to allege facts plausibly suggesting that BOCES had notice of her alleged disability or any limitation related thereto (*id.* at 9-10); (3) Plaintiff's hostile-learning-environment claims must be dismissed because (a) the Second Circuit has never explicitly recognized the existence of such a theory of recovery and (b) she has failed to allege facts plausibly suggesting that she was harassed (or, for that matter, dismissed from the nursing program) *because of* a disability or, that Defendants knew of any such disability (*id.* at 10-12); (4) Plaintiff's retaliation claims must be dismissed because she has failed to allege facts plausibly suggesting that (a) she engaged in a protected activity (i.e., by complaining about disability-based discrimination or requesting accommodations related to her disability), (b) Defendants were aware that she was engaging in a protected activity, and (c) a causal connection between a protected activity and an adverse action against Plaintiff existed (*id.* at 12-16); (5) Plaintiff's § 1983 claim must be dismissed because (a) she has failed to allege facts plausibly suggesting that her constitutional rights were violated, (b) the basis for her claim is the same as the basis for her retaliation and discrimination claims, and a plaintiff may not resort to § 1983 merely to vindicate rights conferred by another statute that provides for private enforcement of those rights, and (c) Nicolette, Steele, and Kline are entitled to qualified immunity from such a claim (*id.* at 16-18); (6) Plaintiff's state-law claims must be dismissed because she failed to comply with the notice-

of-claim requirements set forth in New York Educ. Law § 3813 (*id.* at 18-19); (7) Plaintiff's discrimination claim under NYSHRL § 296 must be dismissed because (a) New York State law does not recognize such a cause of action asserted by a student against public school entities such as BOCES, and (b) to the extent that she may be understood to assert a claim of "aider and abetter" liability under NYSHRL § 296(6), such a claim must be predicated on an underlying violation of the NYSHRL, which, as noted above, cannot be established against BOCES (*id.* at 19-20); (8) Plaintiff's defamation claim must be dismissed because she has failed to allege facts plausibly suggesting that (a) the statement that she was a "potential child abductor" was published to a third party (i.e., someone other than another faculty member) and (b) Defendants' "qualified common interest privilege" does not apply (given that the statements about Plaintiff were made by and between BOCES faculty members who were evaluating her academic performance) (*id.* at 20-22); (9) Plaintiff's negligence claim must be dismissed because (a) she has failed to allege facts plausibly suggesting that Defendants owed her a duty, or that Defendants were provided notice of the nature of that duty, and (b) to the extent that she may be understood to assert a claim of "educational malpractice," New York State law does not recognize such a claim (*id.* at 22-23); (10) Plaintiff's IIED claim must be dismissed because (a) she has failed to allege facts plausibly suggesting that she was subjected to sufficiently extreme and outrageous conduct, and (b) as a matter of public policy, such claims may not be asserted against a governmental entity (*id.* at 23-24); and (11) Plaintiff's breach-of-contract claim must be dismissed because school policy handbooks containing "general statements of antidiscrimination" may not form the basis of such a claim (*id.* at 24-25).

2.     **Plaintiff's Memorandum of Law in Opposition to Defendants' Motion and in Support of Her Cross-Motion for Leave to Amend Her Complaint**

Generally, in response to Defendants' motion for judgment on the pleadings, Plaintiff advances nine arguments: (1) she should be granted leave to amend her Complaint because each of the factors outlined in *Foman v. Davis*, 371 U.S. 178, 182 (1962), weigh in favor of granting leave to amend (i.e., there has been no undue delay, bad faith, or dilatory tactics on her part, Defendants will not be unduly prejudiced by permitting amendment, and, for the reasons argued in relation to each of her claims, amendment is not futile) (Dkt. No. 31 at 3-6 [Plf.'s Opp'n Memo. of Law]); (2) her RA and (proposed) ADA Title II discrimination claims should not be dismissed because she has pleaded facts plausibly suggesting that (a) her bipolar disorder qualifies as a disability (given that her symptoms related to her bipolar disorder "substantially limit[]" major life activities such as "learning, concentrating, and communicating"), (b) Defendants had notice of her disability (given that, among other things, she disclosed the disability on "physical examination forms" and requested a behavior plan, BOCES expressly agreed to make accommodations for her, and a DRNY attorney contacted BOCES on Plaintiff's behalf to protest the requirement that she be re-admitted to the LPN program based on the fact that she was admitted as a qualified individual with a disability under the ADA), and (c) Defendants discriminated against her by failing to implement reasonable accommodations in light of her disability that they had committed, in writing, to provide to her (*id.* at 7-13); (3) her retaliation claims should not be dismissed because (a) she has alleged facts plausibly suggesting that (i) she repeatedly requested reasonable accommodations from both instructors and administrators and (ii) she suffered adverse actions (specifically, the denial of "academic

opportunities and credentials" and dismissal from the program) as a direct result her requests, and (b) to the extent that Defendants argue that she was dismissed for legitimate, non-discriminatory reasons, those reasons present a factual issue and are not an appropriate basis for dismissal (*id.* at 13-15); (4) her hostile-learning-environment claims should not be dismissed because she has alleged facts plausibly suggesting that (a) she was subject to "unwelcome harassment" when Steele "baselessly characterized [her] as a potential child abductor" and she was subsequently excluded from her class's clinical rotation, (b) this harassment resulted from her "asking inappropriate questions" and "being a 'little too chatty,'" conduct "wholly consistent with [her] manic behavior," and (c) institutional liability is appropriate, given that Nicolette should have known to question Steele's conclusions and that Plaintiff would be traumatized to hear Steele's comments (*id.* at 15-16); (5) her state-law claims should not be dismissed based on her failure to serve Defendants with a notice of claim because she has commenced a collateral proceeding in New York State Supreme Court, Herkimer County, seeking leave to file and serve a late notice of claim and to have her notice of claim deemed to have satisfied N.Y. Educ. Law § 3813 *nunc pro tunc* (*id.* at 16-17); (6) her defamation claim should not be dismissed because she has alleged facts plausibly suggesting that Steele sent an e-mail in February 2016 to Nicolette, insinuating that Plaintiff "was a potential abductor of newborns," and, as a result, Plaintiff suffered special damages (in that she was precluded from completing BOCES' LPN program and entering the field as a career) (*id.* at 17-18); (7) her negligence claim should not be dismissed because she has alleged facts plausibly suggesting that (a) BOCES' agreement to provide accommodations in light of her disability gave rise to a duty to her and (b) BOCES' failure to implement these accommodations constituted a breach of its duty and proximately caused her

-14-

"lost opportunity and advantage" (*id.* at 18); (8) Plaintiff's breach-of-contract claim should not be dismissed because she has alleged facts plausibly suggesting that BOCES breached its non-discrimination policies and its "implied contract" to "act in good faith in its dealing with its students" (*id.* at 18-19); and (9) Plaintiff's IIED claim should not be dismissed because she has alleged facts plausibly suggesting that (a) she was subjected to extreme and outrageous conduct (i.e., Steele's characterization of her as "a potential infant abductor on mere surmise"), and (b) Steele acted recklessly in sharing this accusation with Nicolette, and Nicolette acted recklessly in sharing it with Plaintiff (in light of Plaintiff's disability) and removing her from her clinical rotation (*id.* at 19-20).

### 3.  Plaintiff's Proposed Amended Complaint

In her Proposed Amended Complaint ("PAC"), Plaintiff seeks to, among other things, do the following: (1) add a claim for discrimination under Title II of the ADA; (2) "allege *nunc pro tunc* compliance with the notice requirements of" N.Y. Educ. Law § 3813; (3) "delete" (i.e., withdraw) her claims pursuant to 42 U.S.C. § 1983 and NYSHRL § 296; (4) withdraw her defamation claim to the extent that it asserted a claim of slander (i.e., limit her claim to libel); (5) "add additional detail to her factual allegations"; and (6) attach certain documents to the PAC as exhibits.[4]  (*Id.* at 2; *see generally* Dkt. No. 32, Attachs. 4-5 [Plf.'s PAC]; Dkt. No. 32, Attachs. 1-3 [Exhibits to Plf.'s PAC].)  Generally, support of her proposed new claim, Plaintiff alleges as follows.

---

[4]  These proposed exhibits include the following: (1) the written agreement signed by Plaintiff, Pywar, Nicolette, and Kline, setting forth the "request for reasonable accommodation" as summarized above (Dkt. No. 32, Attach. 1, at 34); (2) Plaintiff's petition for leave to serve a late notice of claim upon Defendants pursuant to N.Y. Gen. Mun. Law § 50-e, filed in New York State Supreme Court, Herkimer County, on September 23, 2016 (Dkt. No. 32, Attach. 1, at 36-53); and (3) certain filings (and related docket notices) in this case, as well as correspondence between counsel (Dkt. No. 32, Attachs. 2-3).

Plaintiff has experienced "a range of symptoms" in connection with her bipolar disorder, including "mania, talkativeness, depression, anxiety, and an inability to concentrate, substantially limiting her ability to learn, concentrate, communicate, and work." (Dkt. No. 32, Attach. 4, at ¶ 18.) A psychiatric evaluation performed on November 19, 2014, "noted" that Plaintiff exhibited "a propensity for verbal aggression" and "marked difficulty with social interactions," and "struggles with feedback from others." (*Id.* at ¶ 19.)

Because this Decision and Order is intended primarily for the review of the parties, the Court will not further recite the factual allegations contained in Plaintiff's PAC. Rather, the Court refers the reader to Plaintiff's PAC in its entirety.

### 4. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants reiterate the arguments in their memorandum of law and advance eight additional arguments: (1) Plaintiff's cross-motion for leave to amend her Complaint should be denied because there has been an undue delay in seeking this relief and, for the reasons argued below, her proposed amendments would be futile (Dkt. No. 33 at 5-6 [Defs.' Reply Memo. of Law]); (2) Plaintiff's allegation that her "disability was clearly disclosed . . . on her physical examination forms" does not plausibly suggest that Defendants had notice that she was "claiming to suffer from a disability" and the "specific limitations" that she experienced as a result of the disability (*id.* at 6-9); (3) Plaintiff's allegation that she "pled with" BOCES faculty and administration to "accommodate her disabilities" does not plausibly suggest that she was engaged in a protected activity because it "provide[s] no notice of when [she] allegedly complained, what she specifically complained about[,] or to whom her complaints were addressed" (*id.* at 9); (4) Plaintiff's hostile education environment

claims must be dismissed because (a) Steele's single "expression of concern" that Plaintiff's erratic behavior suggested a "potential to abduct a newborn" is insufficient to support her claims and (b) she has failed to allege facts plausibly suggesting that (i) Steele "had motivation to" harass her and (ii) Steele or Nicolette knew that Plaintiff suffered from "manic behavior" or "talkativeness" (*id.* at 12-13); (5) with respect to her state-law claims, Plaintiff's proposed allegation that she "anticipates [Herkimer County Supreme Court] hearing [her] petition to grant her leave to satisfy [the] notice of claim requirements *nunc pro tunc*" is insufficient to allege compliance with the notice-of-claim requirement because (a) N.Y. Educ. Law § 3813 requires plaintiffs to plead compliance, not merely *anticipated* compliance, and (b) in any event, Herkimer County Supreme Court dismissed her petition (*id.* at 13-14); (6) Plaintiff's libel claim must be dismissed because she has failed to allege facts plausibly suggesting that (a) the statement contained in Steele's e-mail to Nicolette was published to a third party (i.e., a party not a member of the BOCES faculty) and (b) Steele's concern constituted an expression of fact, rather than opinion (*id.* at 15-16); (7) Plaintiff's IIED claim must be dismissed because it is predicated on the same allegations as her libel claim (i.e., the comments that her behavior suggested the possibility that she might attempt to abduct an infant) (*id.* at 17); and (8) Plaintiff's ADA and RA claims against Nicolette, Steele, and Kline (for which she seeks only money damages) must be dismissed because Title II of the ADA and section 504 of the RA do not provide for individual liability for money damages (*id.* at 17-18).

### C.    Further Procedural Background

On August 26, 2016 (after Defendants filed their motion for judgment on the pleadings), Plaintiff filed a letter-motion, requesting a pre-motion conference and leave to serve a late notice of claim in relation to her state-law claims. (Dkt. No. 23.)  In a response filed on September 12,

2016, Defendants argued, *inter alia*, that the Court lacked subject-matter jurisdiction with respect to Plaintiff's motion. (Dkt. No. 26.) On September 13, 2016, Plaintiff filed another letter, stating her intention to file, "by way of order to show cause, a petition in New York State Supreme Court[,] Herkimer County[,] to seek leave . . . to file a late notice of claim." (Dkt. No. 27 at 1.) Based on what she characterized as a "procedural side track," Plaintiff requested that the Court stay "further briefing" with respect to Defendants' motion for judgment on the pleadings. (*Id.*) In a responsive letter filed the same day, Defendants (1) requested that the Court "decide [Plaintiff's] motion [for leave to file a late notice of claim] on the arguments submitted, regardless of [her] intention to pursue her arguments elsewhere," and (2) opposed Plaintiff's request for "an indefinite 'stay' of her obligation to respond to" their motion for judgment on the pleadings. (Dkt. No. 28 at 1-2.)

On September 22, 2016, U.S. Magistrate Judge Andrew T. Baxter held a telephone conference with the parties and issued a Text Order (1) reflecting that Plaintiff had agreed to withdraw her motion for leave to file a late notice of claim based on her intention to file a petition in state court, and (2) denying Plaintiff's request to stay briefing with respect to Defendants' motion for judgment on the pleadings (Text Order, filed 9/22/2016.) Magistrate Judge Baxter concluded that a stay was inappropriate because Defendants raised "perceived substantive defects in each of Plaintiff's federal and state law claims," and the Court "could decide to dismiss all the federal claims on the merits" or conclude that "the state law claims [a]re substantively deficient regardless of the procedural notice issue." (*Id.*)

On November 10, 2016 (after she filed her opposition and cross-motion), Plaintiff filed an attorney declaration, requesting permission to replace proposed exhibit B to Plaintiff's PAC. (Dkt. No. 35 [Plf.'s Atty. Decl.].) More specifically, Plaintiff sought to replace her petition (and

related exhibits) filed in Herkimer County Supreme Court with a second petition that was filed on October 27, 2016. (Dkt. No. 35, Attach. 1, at 2 [Order to Show Cause, filed 10/27/16 and entered 10/31/16].) As noted above, according to Defendants' reply memorandum of law, Plaintiff's first petition was dismissed.

In a letter-brief filed on November 10, 2016, Defendants "objected to [Plaintiff's] proposed replacement" because the "document . . . did not exist at the time of the filing of her [r]esponse" to Defendants' motion for judgment on the pleadings. (Dkt. No. 36 [Defs.' Ltr. Br.].) In a responsive letter-brief, Plaintiff explained that she sought "merely to substitute the current petition in lieu of an exhibit consisting of a prior petition" that was dismissed without prejudice due to a "ministerial failing." (Dkt. No. 37 [Plf.'s Ltr. Resp.].) Moreover, Plaintiff argued that "[t]here is no prejudice to Defendants by this substitution . . . to accurately reflect the current state of the parallel proceeding[s]," particularly because Magistrate Judge Baxter had previously "found it appropriate [for the parties] to apprise the Court of the status of those parallel proceedings." (*Id.*)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing a Motion For Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases); *accord*, *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Accordingly, the Court will review Defendants' motion under the standard applicable to a motion to dismiss.

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate

decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the

famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*.

at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at

least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at

1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Id*. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[5]

**B.     Legal Standard Governing a Motion to Amend a Pleading**

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states

that leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2);

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127,

1133 (2d Cir. 1993).  Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be

freely given in the absence of any apparent or declared reason to not grant leave to amend, such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, or futility of the amendment.  *See Foman*, 371 U.S. at 182; *S.S.*

---

[5]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs, Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir. 2002]).  Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted.  *See Annunziato*, 293 F.R.D. at 333 (citations omitted).  As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

### C.     Legal Standards Governing Plaintiff's Claims

Because the parties have (in their memoranda of law) demonstrated an adequate

familiarity with the legal standards governing Plaintiff's claims, the Court will not recite in detail

those legal standards in this Decision and Order, which (again) is intended primarily for the

review of the parties.  Rather, the Court will discuss those legal standards only where necessary

below, in Part III of this Decision and Order.

## III.     ANALYSIS

### A.     Whether Plaintiff's RA Discrimination Claim Must Be Dismissed

After carefully considering the matter, the Court answers this question in the negative for

the reasons set forth in Plaintiff's opposition memorandum of law.  (Dkt. No. 31 at 7-13 [Plf.'s

Opp'n Memo. of Law].)  To those reasons, the Court adds the following analysis.

"To state a prima facie claim under either the ADA or the Rehabilitation Act, [a plaintiff]

must allege: '(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded

from participation in a public entity's services, programs or activities or was otherwise

discriminated against by a public entity; and (3) that such exclusion or discrimination was due to

[her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*,

340 F.3d 27, 34-35 [2d Cir. 2003]) (internal quotation marks omitted); *accord, B.C. v. Mount*

*Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016).[6]  "Exclusion or discrimination may take the

---

[6]       Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Under the RA, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  "Because the standards adopted by the two statutes are nearly identical, [courts may] consider the merits of these claims together."  *Mount Vernon Sch.*

form of disparate treatment, disparate impact, or failure to make a reasonable accommodation."
*Mount Vernon Sch. Dist.*, 837 F.3d at 158.

With respect to Defendants' argument that Plaintiff has failed to allege facts plausibly suggesting that she suffers from a disability for purposes of the RA (and ADA), the Court concludes that, based on the additional factual allegations contained in her PAC, Plaintiff has (albeit barely) met her burden on this element.  "Both statutes define a disabled individual as one who '(i) has a physical or mental impairment that substantially limits one or more major life activities of such individual, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.'"  *Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc.*, 14-CV-1729, 2016 WL 5799407, at *7 (S.D.N.Y. Sept. 30, 2016) (citing 29 U.S.C. § 705[20][B] and 42 U.S.C. § 12102[1]) (internal quotation marks omitted); *see also* 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.").

Here, Plaintiff's PAC alleges, among other things, that (1) she suffers from bipolar disorder, (2) she was diagnosed "8 or 9 years ago," (3) she receives regular counseling with a psychotherapist and drug therapies, and (4) that her symptoms include "mania, talkativeness, depression, anxiety, and an inability to concentrate, substantially limiting her ability to learn, concentrate, communicate, and work," as well as "a propensity for verbal aggression" and "a marked difficulty with social interactions."  (Dkt. No. 32, Attach. 4, at ¶¶ 15, 18-19 [Plf.'s PAC].)  *See also, e.g., Graham v. Macy's, Inc.*, 14-CV-3192, 2016 WL 354897, at *4 (S.D.N.Y.

---

*Dist.*, 837 F.3d at 158 (quoting *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 [2d Cir. 2012]).

Jan. 28, 2016) (concluding that plaintiff's amended complaint alleged facts plausibly suggesting

that she was disabled within the meaning of the ADA, where it alleged that she suffered from

bipolar disorder, that the disorder "causes her to sleep too late or not at all," and that she "cannot

concentrate" and "stays at home" when she is not in "remission"); *cf. Sternkopf v. White Plains

Hosp.*, 14-CV-4076, 2015 WL 5692183, at *7 & n.8 (S.D.N.Y. Sept. 25, 2015) (explaining that,

although "bipolar disorder can be an impairment under the DAA," plaintiff's amended complaint

was "almost wholly devoid of facts explaining how bipolar disorder affected [his] life").  These

factual allegations, considered in combination with the other allegations in Plaintiff's PAC,

plausibly suggest that she suffers from a disability within the meaning of the RA (and the ADA).

With respect to the issue of Defendants' knowledge of Plaintiff's disability, the Court

concludes that Plaintiff has properly pleaded this element of her claims as well.  In her PAC,

Plaintiff alleges, among other things, that (1) her disability was "disclosed and documented on

her physical examination forms," (2) Pywar, a vocational rehabilitation counselor, was "in

contact on an ongoing basis throughout the school year" with Nicolette and Kline regarding

Plaintiff's disability, (3) one of terms of Plaintiff's readmission into the LPN program was to

"[o]btain counseling as appropriate to deal with identified issues . . . ," and (4) Defendants

(through Nicolette and Kline) agreed, in writing, to provide Plaintiff with identified reasonable

accommodations.[7]  (Dkt. No. 32, Attach. 4, at ¶¶ 21-22, 25, 31.)  While Defendants point out that

this writing does not expressly reference Plaintiff's bipolar disorder or enumerate the limitations

---

[7]     The written agreement referenced in Plaintiff's Complaint and PAC bears the
letterhead of the New York State Education Department's Office of Adult Career and Continuing
Education Services, states that it is "a request for reasonable accommodation from Autumn
Yennard for the Spring 2016 academic period," and lists the requested accommodations
referenced above in Part I.A.3. of this Decision and Order.  (Dkt. No. 32, Attach. 1, at 34.)  As
noted above, this document was signed by Plaintiff, Pywar, Nicolette, and Kline.  (*Id.*)

to which the "reasonable accommodations" related (Dkt. No. 33 at 8 [Defs.' Reply Memo. of Law]), the Court finds that Plaintiff's PAC alleges facts plausibly suggesting that, under the circumstances, Defendants had notice regarding Plaintiff's disability.[8]

For each of these reasons, as well as those set forth in Plaintiff's opposition memorandum of law, Defendants' motion for judgment on the pleadings with respect to Plaintiff's RA discrimination claim is denied.

### B.    Whether Plaintiff's Retaliation Claims Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative, substantially for the reasons set forth in Defendants' memoranda of law.  (Dkt. No. 21, Attach. 7, at 12-16 [Defs.' Memo. of Law]; Dkt. No. 33 at 9-11 [Defs.' Reply Memo. of Law].)  To those reasons, the Court adds the following analysis.

To state a claim for retaliation under the ADA or the RA, a plaintiff must allege facts plausibly suggesting that (1) she "was engaged in protected activity," (2) "the alleged retaliator knew that plaintiff was involved in protected activity," (3) "an adverse decision or course of

---

[8]    The Court finds Defendants' reliance on *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460 (S.D.N.Y. 2012), in which the district court granted defendant's motion for summary judgment, unpersuasive.  (Dkt. No. 33 at 9 [Defs.' Reply Memo. of Law].) In *Shaywitz*, the court concluded, with the benefit of an evidentiary record, that defendant did not have adequate knowledge of plaintiff's disability because (1) plaintiff failed to check the box on a form to alert defendant of his need for accommodations for an examination on three different occasions, and (2) although his attorney wrote a letter to defendant, the letter (a) "d[id] not provide any documentation regarding [plaintiff's] conditions, nor d[id] it contain an identified request for accommodation," and (b) arrived "well after" plaintiff failed the examination for the third time, and thus, at a point in time when defendant "was not in a position" to offer accommodations.  *Shaywitz*, 848 F. Supp. 2d at 467-68.  While Plaintiff will be required to substantiate her claims with evidentiary support (including the fact of Defendants' timely knowledge of her need for any accommodations of which they alleged deprived her), the Court concludes that, for purposes of Defendants' present motion, she has alleged facts plausibly suggesting that adequate notice was conveyed to Defendants in this case.

action was taken against plaintiff," and (4) "a causal connection exists between the protected

activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148

(2d Cir. 2002) (applying same standard to retaliation claims pursuant to the ADA and RA).

In this case, Plaintiff argues that she engaged in protected activity by "persist[ing] in

demanding" that BOCES provide "the accommodations to which she was entitled[.]"  (Dkt. No.

31 at 14 [Plf.'s Opp'n Memo. of Law].)  However, Plaintiff's Complaint and PAC do not allege

facts plausibly suggesting that she was subjected to an adverse action due to her requests for

accommodation.  Specifically, Plaintiff alleges that she "inquired and pled with the faculty

supervisors [and] administration through all of the appeal process to ensure they accommodated

her disabilities as . . . promised."  (Dkt. No. 1 at ¶ 57 [Plf.'s Compl.]; Dkt. No. 32, Attach. 5, at ¶

58 [Plf.'s PAC].)  The nature of this vague factual allegation reveals that, by that point (i.e., the

"appeal process"), Plaintiff had already been dismissed (again) from the LPN program.  This

sequence of events does not plausibly suggest a causal connection between a protected activity

and adverse action.  *See generally Young v. Westchester Cty. Dep't of Soc. Servs.*, 57 F. App'x

492, 495 (2d Cir. 2003) ("[W]here the adverse action was already ongoing at the time of the

protected activity, or is very similar to another adverse action that was taken before the protected

activity, with no other change in relevant circumstances, logic precludes any inference of

causation.").  Similarly, to the extent that Plaintiff may be understood to allege that Steele's

opinion about her behavior during the St. Luke's Hospital clinical session, as conveyed to

Nicolette, constituted an adverse action taken in response to her attempts to "ensure [Defendants]

accommodated her disabilities as . . . promised," she has failed to allege facts plausibly

suggesting that any causal connection existed, particularly given that, by her own account,

Steele's opinion was conveyed *before* Plaintiff's dismissal and "appeal process" (during which she "inquired and pled" to "ensure" that she received accommodations). (Dkt. No. 32, Attach. 5, at ¶¶ 58-59 [Plf.'s PAC].)

Moreover, Plaintiff alleges that, in March 2016, her instructor at the Little Falls hospital clinical session deprived her of her "daily checklist" for one day (by not giving it to her immediately after the clinical session but rather stating that Plaintiff would receive it the next day) and "reported to Nicolette," who "lowered Plaintiff's daily grade" and, "[u]pon information and belief . . . sought to ensure that Plaintiff would fail her clinical requirements and be dismissed from the program." (Dkt. No. 32, Attach. 5, at ¶ 46.) Even assuming that this one-day delay was sufficiently serious to constitute adverse action, this vague and conclusory factual allegation does not plausibly suggest that Nicolette took any adverse action against Plaintiff *because of* Plaintiff's request to receive her daily checklist from her instructor (nor, for that matter, does it indicate what the instructor discussed when she "reported to" Nicolette, how Nicolette "sought to ensure that" Plaintiff failed her clinical requirements given that, as Plaintiff alleges, she "performed well," or when these events happened relative to Plaintiff's "dismissal"). (*Id.*)

Plaintiff also alleges that she was "placed on clinical probation." (Dkt. No. 32, Attach. 4, at ¶ 35.) Although this factual allegation follows Plaintiff's allegation that Nicolette "gave no response" to Pywar's suggestion that "a stronger clinical student assist Plaintiff" (*id.* at ¶ 34), Plaintiff's Complaint and PAC do not plausibly suggest that (1) these two events were causally linked (or, for that matter, when each event occurred relative to the other) or (2) Pywar's proposal that another student assist Plaintiff constituted a request for a reasonable

accommodation related to Plaintiff's disability (and that Defendants understood it be one, such that it may constitute a protected activity).

Accordingly, Plaintiff's retaliation claims are dismissed.

**C.**     **Whether Plaintiff's Hostile-Learning-Environment Claims Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law. (Dkt. No. 21, Attach. 7, at 10-12 [Defs.' Memo. of Law]; Dkt. No. 33 at 11-13 [Def.'s Reply Memo. of Law].)

The Court would add only that, as Defendants note, a hostile-learning-environment claim "has yet to be recognized by the Second Circuit." *Hamilton v. City Coll. of City Univ. of New York*, 173 F. Supp. 2d 181, 185 n.1 (S.D.N.Y. 2001) (concluding that, "even assuming the availability and demonstrability of such a claim, [a professor's] single denial of an accommodation" was insufficient to establish plaintiff's claim); *see also Spychalsky v. Sullivan*, 01-CV-0958, 2003 WL 22071602, at *12-14 (E.D.N.Y. Aug. 29, 2003) (concluding that, even if such a claim is cognizable, defendant was entitled to summary judgment on the merits).

Moreover, even assuming that a hostile-learning-environment claim is cognizable under Second Circuit precedent, the Court concludes that, for the reasons set forth in Defendants' memoranda of law, Plaintiff has failed to allege facts plausibly suggesting that she was subjected to such an environment in this case. *See Spychalsky*, 2003 WL 22071602, at *11 (stating that a hostile learning environment exists "when harassment based on a student's disability has 'the purpose or effect of unreasonably interfering with [the] individual's performance or [of] creating an intimidating, hostile, or offensive environment'") (quoting *Guckenberger*, 957 F. Supp. at

314).[9]

###    D.    Whether Plaintiff's Remaining State-Law Claims Must Be Dismissed Based on Her Failure to Satisfy Statutory Notice-of-Claim Requirements

As discussed above, the parties do not dispute that Plaintiff failed to timely serve a notice of claim on Defendants.[10]  Rather, Plaintiff commenced collateral proceedings in state court, seeking leave to serve a late notice of claim upon Defendants.  In her PAC, Plaintiff alleges that she "anticipates [that Herkimer County Supreme Court will] hear[ her] petition to grant leave to satisfy [the] notice of claim requirements *nunc pro tunc* on December 1, 2016, the next scheduled hearing date."  (Dkt. No. 32, Attach. 5, at ¶¶ 120, 128, 133, 141 [Plf.'s PAC].)  The

---

[9]    "To state a cognizable claim for hostile learning environment harassment under the ADA and Rehabilitation Act, a plaintiff must allege: (1) that she is a member of a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment is based on a protected characteristic, her disability, (4) that the harassment is sufficiently severe or pervasive that it alters the conditions of her education and creates an abusive educational environment, and (5) that there is a basis for institutional liability."  *Guckenberger*, 957 F. Supp. at 314.

[10]    Section 3813(1) of the New York Education Law provides that "[n]o action or proceeding, for any cause whatever, except as hereinafter provided . . . shall be prosecuted or maintained against any . . . board of cooperative educational services . . . or any officer [thereof] . . . unless it shall appear by and as an allegation in the complaint . . . that a written verified claim . . . was presented to the governing body of said district or school within three months after the accrual of such claim . . . ."  N.Y. Educ. Law § 3813(1).  New York Education Law § 3813(2), which applies to tort claims, "provides that any tort claim against [any party enumerated in § 3813(1) or its] employee is subject to the notice of claim requirements set forth in New York General Municipal Law Sections 50-e and 50-i."  *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 306 (E.D.N.Y. 2012); *accord*, N.Y. Educ. Law § 3813(2).  Similar to N.Y. Educ. Law § 3813(1), a plaintiff asserting a tort claim must (among other things) serve a notice of claim "within ninety days after the claim arises," N.Y. Gen. Mun. Law § 50-e(1)(a), and "plead [in the complaint] that it has been served . . . ."  *Smith v. New York City Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (citing N.Y. Educ. Law § 3813[1] and N.Y. Gen. Mun. Law § 50-e).  A plaintiff may seek leave to serve a late notice of claim.  *See* N.Y. Educ. Law § 3813(2-a); N.Y. Gen. Mun. Law § 50-e(5).  As a general rule, "state notice-of-claim statutes apply to *state*-law claims" asserted as pendant claims in a federal action.  *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).

parties have not advised the Court of the status of those proceedings since November 10, 2016 (the date on which Plaintiff requested permission to substitute her second state-court petition as an exhibit to her cross-motion to amend her Complaint).

Determining the most appropriate disposition of Plaintiff's state-law claims in light of this procedural posture is a thornier issue than it may first appear. As an initial matter, the Court acknowledges that the parties have undertaken the effort to brief the substantive merits of Plaintiff's state-law claims. Magistrate Judge Baxter's order that the parties do so, rather than stay the briefing of Defendants' motion for judgment on the pleadings for an indeterminate length of time pending a resolution of the state-court proceedings, has logical appeal, fosters judicial economy, and aids in ensuring that Defendants are not subject to this lawsuit indefinitely.

However, the Court is also mindful that "[s]atisfaction of the[ notice-of-claim] requirements is a condition precedent to bringing an action against a school district or a board of education," is "a prerequisite to the right to sue," and "courts are without power to substitute something else[.]" *Grenzig v. Sachem Sch. Dist.*, 13-CV-7278, 2014 WL 11191093, at *2 (E.D.N.Y. Feb. 11, 2014) (quoting *Parochial Bus Sys, Inc. v. Bd. of Educ. of City of New York*, 60 N.Y. 2d 539, 547-48 [1983]); *accord, Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010) ("It is well settled that [satisfaction of] Education Law § 3813(1) is a statutory condition precedent to a petitioner's bringing of a proceeding against a school district or board of education, and a petitioner's failure to comply is a fatal defect mandating dismissal of the action.") (internal quotation marks omitted). Some courts have held that a failure to serve a notice of claim (and to allege compliance with this requirement in the complaint) deprives the

court of subject-matter jurisdiction to adjudicate claims that require such notice.[11]  On the other

hand, some courts have held that a failure to comply with the notice-of-claim requirements does

not implicate subject-matter jurisdiction (but rather triggers a failure-to-state-a-claim analysis).[12]

The significance of this distinction is that, "where a court lacks subject matter jurisdiction, it also

---

[11]     *See, e.g., Whittle v. Ulloa*, 15-CV-8875, 2016 WL 7351895, at *6 (S.D.N.Y. Dec. 19, 2016) ("Liberally construed, plaintiff's amended complaint contains state law tort claims for negligence and medical malpractice.  However, this Court does not have subject matter jurisdiction over these claims because plaintiff has failed to allege he served a notice of claim in compliance with N.Y. Gen. Mun. Law § 50-e(1), as required by § 50-i."); *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 76-77 (S.D.N.Y. 2016) (concluding that certain state-law claims asserted against defendant housing authority "must be dismissed for lack of subject-matter jurisdiction" because plaintiff's notice of claim did not comply with Gen. Mun. Law § 50-e); *Chapman v. City of New York*, 06-CV-3153, 2011 WL 1240001, at *13 (E.D.N.Y. Mar. 30, 2011) ("Under New York jurisdictional law, a plaintiff must both plead and prove compliance with the notice of claim requirement under Education Law § 3813 in any action against DOE."); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 126-29 (W.D.N.Y. 2010) (granting defendants' motion to dismiss, based on lack of subject-matter jurisdiction, non-tort claims for failure to satisfy requirements under N.Y. Educ. Law § 3813[1] and tort claims for failure to satisfy requirements under N.Y. Educ. Law § 3813[2]); *Carlson*, 679 F. Supp. 2d at 364 ("The notice of claim provisions at issue in this action [N.Y. Educ. Law § 3813 and N.Y. Gen. Mun. Law §§ 50-e and 50-i] are jurisdictional in nature."); *see generally Pritchard v. Curtis*, 101 A.D.3d 1502, 1504 (N.Y. App. Div. 3d Dep't 2012) ("While courts have dismissed actions based on the failure to comply with a condition precedent related to a statutory notice of claim, such requirements[, unlike the statute under consideration,] affect subject matter jurisdiction because the municipality or governmental authority [has] waived immunity and consented to be sued only in the event that certain jurisdictional conditions precedent are complied with[.]") (internal quotation marks omitted).

[12]     *See, e.g., Kastle v. Town of Kent, N.Y.*, 13-CV-2256, 2014 WL 1508703, at *10 n.7 (S.D.N.Y. Mar. 21, 2014) (construing certain defendants' motion to dismiss for lack of subject-matter jurisdiction as one to dismiss for failure to state a claim because those defendants did "not provide[] the Court with any authority suggesting [that] plaintiffs' failure to raise an abuse of process claim in their [a]mended [n]otice [of claim] has jurisdictional implications under the circumstances presented here") (citing *Hardy*, 164 F.3d at 794 ["Failure to comply with [notice of claim] requirements ordinarily requires a dismissal for failure to state a cause of action."]); *Dodson v. Bd. of Educ. of the Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 249 n.8 (E.D.N.Y. 2014) ("Defendants claim that failure to comply with the notice of claim requirements requires dismissal for lack of subject matter jurisdiction.  This is not accurate; failure to comply with these requirements requires dismissal for failure to state a claim under Rule 12(b)(6).").

lacks the power to dismiss with prejudice." *Jetblue Airways Corp. v. CopyTele Inc.*, 629 F.

App'x 44, 45 (2d Cir. 2015) (summary order) (quoting *Hernandez v. Conriv Realty Assocs.*, 182

F.3d 121, 123 [2d Cir. 1999]).  However, in either case, compliance with the notice-of-claim

requirements is a condition precedent to suit on those claims, and Plaintiff's failure to satisfy

these requirements is a fatal defect to those claims. *Grenzig*, 2014 WL 11191093, at *2 (quoting

*Parochial Bus Sys, Inc*, 60 N.Y. 2d at 547-48).

      Under the specific circumstances of this case, the Court finds that "[t]he correct remedy .

. . is dismissal and not, as Plaintiff [appears to] suggest[], to reserve decision pending the

outcome of the state court's decision" *Wood v. Town of E. Hampton*, 08-CV-4197, 2010 WL

3924847, at *27 (E.D.N.Y. Sept. 30, 2010) (granting defendant's motion to dismiss, without

prejudice, plaintiff's state-law claims for failure to timely serve a notice of claim, rather than

reserve decision "during the pendency of his application to serve a late notice of claim in New

York Supreme Court") (footnote omitted); *accord, Dilworth v. Goldberg*, 10-CV-2224, 2011 WL

4526555, at *6 (S.D.N.Y. Sept. 30, 2011) (dismissing most of plaintiffs' state tort claims against

municipal defendants due to their failure to comply with notice-of-claim requirements, and

explaining that, "[i]f plaintiffs have been granted permission from state court to file and serve a

late notice of claim on the Individual County Defendants or the Institutional County Defendants,

. . . plaintiffs must amend their complaint to plead compliance with the notice requirement."); *see

also Washington v. Borough of Manhattan Cmty. Coll*, 16-CV-6168, 2016 WL 7410717, at *2

(S.D.N.Y. Dec. 21, 2016) ("Washington can return to federal court with her NYCHRL and

NYSHRL claims if she 'has made application to the appropriate state court for leave to file a late

notice of claim *and that request has been granted and such a notice has been filed*.'") (quoting

*Brown v. Metro. Trans. Auth.*, 717 F. Supp. 257, 269 [S.D.N.Y. 1989]) (emphasis added);

*Cortlandt v. Westchester Cty.*, 07-CV-1783, 2007 WL 3238674, at *8 (S.D.N.Y. Oct. 31, 2007)

(noting that "[f]ederal courts do not have jurisdiction to hear complaints from plaintiffs who have

failed to comply with the notice of claim requirement," dismissing plaintiff's state-law claims

without prejudice, and explaining that "[p]laintiff can renew her motion for leave to amend the

complaint to assert her pendant state law claims only after she has filed an application with the

appropriate state court for leave to file a late notice of claim, *and* that request has been granted

*and* such notice has been served") (emphasis added) (internal quotation marks omitted);

*Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 199 (E.D.N.Y. 2006) (dismissing plaintiff's

state-law claims without prejudice for failure to serve a timely notice of claim; explaining that

"[p]laintiffs can return to federal court with their pendent state law claims only after they have

satisfied the condition precedent required by [N.Y. County Law §] 52 and [N.Y. Gen. Mun. Law

§] 50-e–that is, after they have filed an application to the appropriate state court for leave to file

a late notice of claim, that request has been granted, *and* such a notice has been filed") (emphasis

added).

In her opposition memorandum of law, Plaintiff argues in a conclusory manner that "[t]he

mere pendency of th[e] collateral proceeding precludes dismissal of [her] state law claims on . . .

notice grounds."  (Dkt. No. 31 at 17 [Plf.'s Opp'n Memo. of Law].)  Plaintiff's reliance upon

*Bailey v. Fortier*, 09-CV-0742, 2010 WL 4005258, at *9 (N.D.N.Y. Aug. 30, 2010) (Peebles,

M.J.), is misplaced, given that the point of law for which Plaintiff cites *Bailey* (i.e., "[u]nless a

proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits

of a claim or defense should not be considered in a motion to amend") is not implicated here and

does not support Plaintiff's argument.  Furthermore, here, Plaintiff's PAC alleges that she has commenced collateral proceedings in state court to request permission to serve a late notice of claim.

Moreover, Plaintiff cites *Williams v. N.Y. State Office of Mental Health*, 10-CV-1022, 2014 WL 1311405, at *1 (E.D.N.Y. Mar. 4, 2014), for the point of law that "a party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  (Dkt. No. 31 at 17.)  However, this general axiom does not support the conclusion that Plaintiff has raised a material issue of *fact* merely because she alleges that she is seeking permission in state court to correct her failure to satisfy a *legal* condition precedent to her state-law claims.  Stated otherwise, unless and until Plaintiff's application for leave to serve a late notice of claim is granted, she has not complied with the notice-of-claim requirements; and, for the same reasons, amendment of her Complaint (which made no mention of her compliance with the notice-of-claim requirements) to allege *future anticipated* compliance with the notice-of-claim requirements is futile because it does not accomplish what the statutes require (that is, allege actual compliance).  *See, e.g., Dingle v. City of New York*, 10-CV-0004, 2010 WL 2976521, at *11 (S.D.N.Y. July 28, 2010) (dismissing plaintiff's state-law claims without prejudice because, "[a]lthough [he] eventually filed a Notice of Claim on June 10, 2010, it is beyond cavil that he did not meet the statutory pleading requirements at the time of filing. . . . By filing a notice of claim midway through the pleadings, [plaintiff] . . . failed to comply New York State's statutory requirements.")  This conclusion is logically consistent with the corollary point of law that a plaintiff's service of a late notice of claim, "without [court] permission to do so, is treated as a nullity."  *In re Dayton*, 786 F. Supp.

2d 809, 825 (S.D.N.Y. 2011) (citing *Laroc v. City of New York*, 46 A.D.3d 760, 761 [N.Y. App.

Div. 2d Dep't 2007] [finding that "plaintiff failed to serve her notice of claim within 90 days . . .

and her late service of a notice of claim without leave of court was a nullity"]).[13]

For the foregoing reasons, Plaintiff's seventh (defamation), eighth (negligence), ninth

(breach-of-contract), and tenth (IIED) claims are dismissed for failure to comply with the

applicable statutory notice-of-claim requirements. However, dismissal of these claims is without

prejudice. In the event that Plaintiff (1) is granted leave by Herkimer County Supreme Court to

serve a late notice of claim upon Defendants and (2) properly serves Defendants with the notice

of claim, Plaintiff may seek leave to amend her complaint to reflect these facts and to relate her

factual allegations back to the date of her original Complaint pursuant to Fed. R. Civ. P.

15(c)(1)(B).

### E.     Whether Plaintiff's Cross-Motion for Leave to Amend Her Complaint Should Be Granted

After carefully considering the matter, the Court largely answers this question in the

affirmative, in part for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No.

31 at 6-12 [Plf.'s Opp'n Memo. of Law].) Defendants have not argued that they would be

prejudiced by the amendment, and their conclusory reference to Plaintiff's "undue delay" (Dkt.

No. 33 at 5 [Defs.' Reply Memo. of Law]) is undercut by the fact that the parties appear to have

---

[13]     The Court adds two points. First, Plaintiff does not argue that any of her state-law claims, as asserted against any of the Defendants, are not subject to the statutory notice-of-claim requirements. *See. e.g., Nieblas-Love*, 165 F. Supp. 3d at 77 (noting that "the notice-of-claim requirement applies to claims against a municipal employee only to the extent that the employee has a right to indemnification") (citing *Jean-Lauren v. Hennessy*, 05-CV-1155, 2008 WL 3049875, at *19 n.5 [E.D.N.Y. Aug. 1, 2008] [collecting cases]). Second (and relatedly), although Plaintiff seeks to withdraw her claim pursuant to NYSHRL § 296 in her PAC, she does not oppose Defendants' argument that this claim is also subject to the notice-of-claim requirements. (Dkt. No. 21, Attach. 7, at 19 [Defs.' Memo. of Law].)

exchanged no discovery, and Plaintiff's cross-motion closely followed the filing of Defendants' motion for judgment on the pleadings. Moreover, the Court notes that (1) although Plaintiff proposes to add a claim for discrimination pursuant to the ADA, this claim is based on the same factual allegations as, and is subject to substantially similar legal standards as, her already pending RA discrimination claim (*see, supra*, Part III.A. of this Decision and Order), and (2) Plaintiff's PAC also proposes to streamline the case by withdrawing two of her claims. (*See generally* Dkt. No. 32, Attach. 5 [Plf.'s PAC].)

Therefore, to the limited extent that Plaintiff's claims survive Defendants' motion for judgment on the pleadings (and based on the possibility that Plaintiff's proposed additional factual allegations related to her disability and time at BOCES will serve to aid in crystallizing those claims), amendment to add these factual allegations (as well as pertinent exhibits to her complaint) is appropriate. However, to the extent that Plaintiff's claims do not survive Defendants' motion, those claims are dismissed from Plaintiff's Amended Complaint. As discussed above, the Court finds to be futile Plaintiff's proposed amendments reflecting the fact that she commenced a proceeding in Herkimer County Supreme Court in an effort to obtain leave to serve a late notice of claim, given that this fact does not cure her failure to comply with the notice-of-claim requirements. Accordingly, amendment in this regard is unwarranted.

Finally, the Court denies Plaintiff's late-blossoming request to substitute, as a proposed exhibit to her PAC, her second petition filed in Herkimer County Supreme Court and related documents (in place of her first petition, which was dismissed). (Dkt. No. 35.) While the Court appreciates being apprised of the status of Plaintiff's collateral state-court proceedings (and directs the parties to continue to do so as appropriate), the proposed substitution will not cure the defect discussed above (i.e., the failure to comply with the notice-of-claim requirement and to plead actual compliance in the complaint).

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No 21) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's cross-motion for leave to file an Amended Complaint (Dkt. No. 30) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that, based upon Defendants' motion for judgment on the pleadings, the following claims are also **DISMISSED** from Plaintiff's Complaint:

(1)  Plaintiff's Second Cause of Action (asserting a retaliation claim pursuant to the Rehabilitation Act);

(2)  Plaintiff's Third Cause of Action (asserting a retaliation claim pursuant to the ADA);

(3)  Plaintiff's Fourth Cause of Action (asserting a hostile-learning-environment claim pursuant to the Rehabilitation Act);

(4)  Plaintiff's Fifth Cause of Action (asserting a hostile-learning-environment claim pursuant to the ADA);

(5)  Plaintiff's Seventh Cause of Action (asserting a defamation claim);

(6)  Plaintiff's Eighth Cause of Action (asserting a negligence claim);

(7)  Plaintiff's Ninth Cause of Action (asserting a breach-of-contract claim); and

(8)  Plaintiff's Tenth Cause of Action (asserting an intentional-infliction-of-emotional-distress claim); and it is further

**ORDERED** that, based upon Plaintiff's cross-motion for leave to file an Amended Complaint, and in accordance with Plaintiff's Proposed Amended Complaint, the following claims are also **DISMISSED** from this action:

(1)  Plaintiff's Sixth Cause of Action (asserting a claim of disability discrimination pursuant to NYSHRL § 296); and

(2)  Plaintiff's Eleventh Cause of Action (asserting a claim pursuant to 42 U.S.C. § 1983 for violation of her civil rights); and it is further

**ORDERED** that, based upon Plaintiff's cross-motion for leave to file an Amended Complaint, and in accordance with Plaintiff's Proposed Amended Complaint, Plaintiff's request to interpose a discrimination claim pursuant to the ADA is **GRANTED**; and it is further

**ORDERED** that, as of the date of the filing of this Decision and Order, the following claims remain **PENDING** in this action:

(1)  Plaintiff's First Cause of Action in her Proposed Amended Complaint (asserting a discrimination claim pursuant to Section 504 of the Rehabilitation Act); and

(2)  Plaintiff's proposed Second Cause of Action in her Proposed Amended Complaint (asserting a discrimination claim pursuant to the ADA); and it is further

**ORDERED** that Plaintiff shall, within **SEVEN (7) DAYS** from the date of this Decision and Order, file a revised, signed Amended Complaint that omits the claims dismissed by, and asserts only the claims permitted by, this Decision and Order.  Defendants are directed to file an answer to Plaintiff's Amended Complaint in accordance with the Federal Rules of Civil Procedure.  This case is referred back to Magistrate Judge Baxter for the setting of pretrial deadlines.

Dated: March 14, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge