UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AUTUMN YENNARD,

                Plaintiff,

v.                                       6:16-CV-0556
                                       (GTS/ATB)

HERKIMER BOCES,

                Defendant.

_____

APPEARANCES:                                OF COUNSEL:

SANDOWSKI KATZ LLP               RAPHAEL KATZ, ESQ.
  Counsel for Plaintiff                ROBERT W. SADOWSKI, ESQ.
11 Broadway, Suite 615
New York, New York 10004

OFFICE OF FRANK W. MILLER       FRANK W. MILLER, ESQ.
  Counsel for Defendant
6575 Kirkville Road
East Syracuse, New York 13057

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this disability discrimination action filed by Autumn Yennard ("Plaintiff") against Herkimer BOCES ("Defendant"), is Defendant's motion for summary judgment. (Dkt. No. 66.) For the reasons set forth below, Defendants' motion for summary judgment is granted.

## I.    RELEVANT BACKGROUND

### A.    Relevant Procedural History and Plaintiff's Amended Complaint

On August 24, 2016, Defendant (along with dismissed parties Mary Kline, Sara Nicolette, and Lesa Steele) filed a motion for judgment on the pleadings, in response to which

Plaintiff filed a cross-motion to file an amended complaint. (Dkt. Nos. 21, 30.) The Court issued its Decision and Order on Defendant's motion on March 14, 2017, in which it dismissed Plaintiff's claims for retaliation under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), hostile learning environment under the Rehabilitation Act and the ADA, state law defamation, state law negligence, state law breach of contract, and state law intentional infliction of emotional distress (which were present in the initial Complaint), as well as her claims for disability discrimination under the New York State Human Rights Law and violation of her civil rights under 42 U.S.C. § 1983 (which were added in the proposed Amended Complaint). (Dkt. No. 38 [Decision and Order filed Mar. 14, 2017].) Plaintiff then filed her Amended Complaint on March 16, 2017. (Dkt. No. 39.) On March 27, 2017, the Court issued a Decision and Order clarifying that its Decision and Order of March 14, 2017, dismissed Plaintiff's individual claims against Ms. Kline, Ms. Nicolette, and Ms. Steele. (Dkt. No. 43 [Decision and Order filed Mar. 27, 2017].) Pursuant to that Decision and Order, only the following two claims are still pending in this action and thus challenged by Defendant's current motion for summary judgment: (1) Plaintiff's claim for discrimination under the Rehabilitation Act; and (2) Plaintiff's claim for discrimination under the ADA. (*Id.*)

As to both claims, Plaintiff alleges that (a) she is a qualified individual with a disability (i.e., bipolar disorder), (b) Defendant subjected her to discriminatory acts because of her disabilities, including denying reasonable and necessary accommodations and failing to engage in an interactive process to consider Plaintiff's requested accommodations, and (c) Defendant acted with deliberate indifference toward Plaintiff. (Dkt. No. 39, at ¶¶ 79-92 [Pl.'s Am. Compl.].) More specifically, Plaintiff alleges that, although Defendant agreed to provide

Plaintiff with certain reasonable accommodations, including providing daily "quick checks" to give her feedback on her performance in the clinical setting, it ultimately did not consistently provide these accommodations. (*Id.* at ¶¶ 31-33, 47, 53-57, 60-65, 77.) Plaintiff also alleges that Defendant refused to provide additional accommodations that she requested, including provision of a peer tutor for clinical skills. (*Id.* at ¶¶ 34, 44.)

### B.    Undisputed Material Facts on Defendant's Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and expressly admitted by Plaintiff in her response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 66, Attach. 21 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 69 [Pl.'s Rule 7.1 Resp.].)

Before reciting the material facts of this case, the Court finds it appropriate to address two general issues it has identified with regard to Plaintiff's response to Defendant's Statement of Undisputed Material Facts. First, on numerous occasions, although Plaintiff expressly admits the facts asserted by Defendant, she then follows those admissions with commentary for the Court's consideration. (*See, e.g.*, Dkt. No. 69, at ¶¶ 7, 9, 10-15, 17, 22-25, 41, 45, 49, 52, 56, 62, 64-69, 77, 78.) This is impermissible,[1] regardless of whether the commentary is intended to assert a related fact,[2] place in context or "spin" the asserted fact,[3] or deny a perceived

---

[1]      *See CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) ("[T]he Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed.'"); *Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) ("[T]he statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit.'").

[2]      *See Maioriello v. New York State Office for People With Developmental Disabilities*, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) ("[T]hroughout Plaintiff's Rule 7.1

implication of the asserted fact.[4]

Second, on numerous occasions, in her responses, Plaintiff refuses to expressly admit or deny the facts asserted by Defendant in its Rule 7.1 Statement. (*See*, *e.g.*, Dkt. No. 69, at ¶¶ 16, 21, 40, 42, 46, 47, 53, 61, 73.) This too is impermissible.[5]

Having said that, before Defendant's factual assertions may be deemed to have been "admitted" by Plaintiff pursuant to Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, those factual assertions must be (1) supported by the record evidence to which Defendant has cited in its Rule 7.1 Statement, and (2) not contradicted by any record evidence that the Court has come across during its review of the record (in order to verify the accuracy of

---

Response, she 'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses. . . . Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 417 (S.D.N.Y. 2014) (holding that plaintiff's response to defendant's Rule 56.1 Statement failed to comply with the rule because "counsel neither admits nor denies a particular fact, but instead responds with equivocal statements such as: 'Admit, but defendant omits the balance of plaintiff's testimony'").

[3] *See Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

[4] *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts).

[5] *See* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. . . . The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original); *In re Horowitz*, 14-CV-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) ("[A] response contending to neither admit or deny an allegation does not create a genuine issue of fact.").

Defendant's citations in its Rule 7.1 Statement, and verify the accuracy of Plaintiff's citations in its Statement of Additional Material Facts in Dispute). The following factual assertions meet those requirements.

1. Plaintiff is a resident of Gloversville, New York, United States.

2. Defendant is a public entity within the meaning of Title II of the ADA.

3. Plaintiff first attended the Herkimer BOCES LPN Program in September 2014.

4. Plaintiff testified that, before being admitted to the Herkimer BOCES LPN Program, she had been charged with and convicted of grand larceny.

5. Plaintiff was also charged with welfare fraud in 2016.

6. Plaintiff pled guilty to one count of welfare fraud and served a ten-day sentence.

7. Plaintiff admitted that her criminal record might preclude her from getting her nursing license.

8. When Plaintiff applied to the Herkimer BOCES LPN Program, she familiarized herself with and signed the student nursing handbook.

9. The Herkimer BOCES Practical Nursing Program Handbook states that

> [a] student receiving a 2.0-2.9 in a clinical evaluation period will be placed on clinical probation. The student must achieve a 3.0 or higher clinical performance grade by the next evaluation period to be removed from clinical probation status. Failure to do so may result in dismissal.

10. The Herkimer BOCES Practical Nursing Program Handbook also lists "[h]arassment of other students" as prohibited student conduct in school or clinical settings.

11.     Plaintiff admitted that, on one particular occasion during the 2014-2015 year, she told another student "to shut her mouth before I shut it for her." The other student Plaintiff was speaking to was Rebecca Fuller.

12.     Plaintiff also admitted that threatening another student was contrary to the Herkimer BOCES code of conduct.

13.     Plaintiff was discharged from the Herkimer BOCES LPN Program on June 22, 2015.

14.     Plaintiff testified that Ms. Nicolette discharged her from the program for threatening Rebecca Fuller.

15.     The June 22, 2015, letter to Plaintiff from Ms. Nicolette states that Plaintiff's "actions involving the threatening of another student in the school parking lot and at clinical are direct violations of the Herkimer BOCES Code of Conduct." The letter goes on to state that this conduct "resulted in your ultimate removal from the clinical setting."

16.     The June 22, 2015, letter also references Plaintiff's "last clinical" having been scored as "incomplete/failing."

17.     The letter concludes, "Because of these combined events, you were dismissed from the Herkimer BOCES LPN program on [May 11, 2015]."

18.     The "last clinical" referred to in the June 22, 2015, letter was at Folts Nursing Home.[6]

_____

[6]     Without expressly denying this asserted fact, Plaintiff responds to it by arguing that the citation does not support the asserted fact and that, in any event, the asserted fact is immaterial. (Dkt. No. 69 at ¶ 18 [Pl.'s Rule 7.1 Resp.].) However, the cited source establishes

19. Plaintiff testified that, during that last clinical, at the request of a patient, she "pretended to sit on his lap."

20. Plaintiff's grade for that last clinical was 0.75.[7]

21. Plaintiff testified that "you get a score for every clinical, every day for clinical, and you have to have a 4 to pass. So you get 1, 2, 3, 4, and anything below 3 is failing."[8]

22. Plaintiff also testified that Ms. Nicolette "told us on many occasions that it's her program, she will run it the way she wants to run it."

23. Plaintiff also testified that Ms. Nicolette's manner of running the Herkimer BOCES LPN Program applied to all students.

24. By letter dated June 22, 2015, Plaintiff was readmitted to the Herkimer BOCES LPN Program for the fall of 2016.

---

the alleged fact. (*See* Dkt. No. 66, Attach. 4, at 27 [Pl.'s Dep.] [when discussing the grade noted for the last clinical, Plaintiff was asked "it appears from reading this that the grade was based on interactions with the nursing home staff. Is that the Folts Nursing Home?", to which she replied "yes."].) Additionally, the Court finds that this fact is not immaterial. Therefore, Plaintiff's denial of the asserted fact is ineffective and this fact is deemed admitted.

[7] Plaintiff denies this asserted fact, appearing to argue that there was nothing inappropriate in her actions with the nursing home staff on that day. (Dkt. No. 69, at ¶ 20 [Pl.'s Rule 7.1 Resp.].) However, the June 22, 2015, letter cited by Defendant establishes that Plaintiff's rubric score was 0.75 at the time of her dismissal, and Plaintiff has offered no evidence substantiating that her grade was anything different. This asserted fact is therefore deemed admitted.

[8] The Court acknowledges Plaintiff's notation that Plaintiff misspoke in her deposition when she stated that a student needed a 4 to pass; however, this is an accurate representation of what Plaintiff testified to at her deposition, and she never subsequently corrected her deposition transcript. Moreover, Plaintiff provides no record citation to support her response. The Court therefore finds no reason to exclude this asserted fact from this statement of undisputed facts.

25. Plaintiff had appealed her dismissal.

26. In the course of reapplying for admission, Plaintiff reviewed and signed a clinical orientation sign-off sheet.

27. The clinical orientation sign-off sheet addressed the clinical requirements for the school year.

28. The clinical orientation sign-off sheet signed by Plaintiff included the following language:

> I understand that final clinical grades are given at the end of each rotation. This score is the average of the daily scores for that clinical. A score of 1.9 or below is considered a clinical failure and cause for dismissal. A score of 2 to 2.9 is a probationary pass and must be followed by a clinical pass to remain in the LPN program. A 3 to a 4 is considered a pass.

29. At the time of her readmittance, Plaintiff was a client of ACCES-VR.

30. Together with her ACCES-VR advocate Marguerite Pywar-House and Ms. Nicolette, Plaintiff developed what she termed a "special accommodation plan" to assist her in her clinical classes.

31. Plaintiff testified that her disability was bipolar disorder.

32. Ms. Nicolette requested medical records confirming Plaintiff's diagnosis of bipolar disorder, but none were provided.[9]

33. According to the terms of the Reasonable Accommodation Plan, Plaintiff was to receive "Classroom Quick Check" and "Clinical Quick Check Level II" forms completed on days she had interaction with the clinical instructors.

---

[9] Plaintiff denies this asserted fact, but fails to provide any evidentiary support for that denial. (Dkt. No. 69, at ¶ 32 [Pl.'s Rule 7.1 Resp.].) Because the asserted fact is supported by the evidence cited by Defendant, this fact is deemed admitted.

34. Plaintiff testified that she needed the "quick checklist . . . every day for the things I'm doing wrong."

35. Plaintiff testified that, except for her clinical rotation at Little Falls Hospital, she received her quick check forms "on a regular basis" at the time she was participating in clinicals.[10]

36. Plaintiff failed her Little Falls Hospital clinical rotation.

37. The stated reason that Plaintiff failed the Little Falls Hospital clinical rotation was a critical safety error she had committed.[11]

38. The critical safety error was "droplet precautions, no mask, clipboard in room."

39. Plaintiff explained that a "critical safety is something that could immediately harm the patient or the student, so droplet precaution means that they were on isolation."

40. Plaintiff admitted that "I went in there with no mask and I had my clipboard in my hand. Normally, if they're on isolation, you would wear a mask and gown and you would not go in there with anything at all, including a clipboard."

41. Plaintiff testified that she was told about this critical safety error on the day it happened.

---

[10]     Although Plaintiff denies this asserted fact, the record evidence cited in support of that denial does not actually controvert the fact asserted, which regards what she testified to in her deposition. (Dkt. No. 69, at ¶ 35 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted.

[11]     Although Plaintiff denies this asserted fact, she fails to cite record evidence that actually supports her denial. (Dkt. No. 69, at ¶ 37 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted.

42. This was not Plaintiff's only safety violation during her second admission to the Herkimer BOCES LPN Program.

43. Plaintiff admitted that she did not give a call bell to one of her patients at Little Falls Hospital.

44. This safety violation was brought to Plaintiff's attention at the time it occurred.

45. Plaintiff's cumulative clinical score for Little Falls Hospital clinical rotation was 2.8.

46. This clinical score was not a passing grade.

47. The 2.8 clinical score was based on an average of the scores for each day.

48. Plaintiff also earned a clinical score of 2 on January 11, 2016.[12]

49. This was not a passing score.

50. As for the deficiency that was the reason for the failing clinical score on January 11, 2016, Plaintiff testified that "[m]ost of it was my skills."

51. The Clinical Quick Check form for January 11, 2016, indicates in the nursing skills section that something had been "contaminated," and the words "sterile technique" are circled.

---

[12] Plaintiff denies this asserted fact, arguing that a written note includes a notation by Ms. Nicolette that Plaintiff had "passed" this virtual lab clinical. (Dkt. No. 69, at ¶ 48 [Pl.'s Rule 7.1 Resp.].) However, the evidence does not support Plaintiff's argument. Although there is a handwritten note indicating that Plaintiff was to perform certain skills on videotape to be submitted by January 27, 2016, and this handwritten note includes the "passed" notation, Ms. Nicolette explains in her deposition that this skills tape was not the same as the virtual lab; rather, the skills tape was required because it was deemed that Plaintiff needed to bring her skills to an acceptable level before attending any further clinicals, and the indication that she passed the skills tape does not mean that she also passed the virtual lab. (Dkt. No. 68, Attach. 20, at 1; Dkt. No. 68, Attach. 31, at 42-43 [Nicolette Dep.].) Other evidence supports Defendant's assertion that Plaintiff received a 2 on the January 11, 2016, clinical, and therefore this asserted fact is deemed admitted.

52.     Plaintiff testified that these entries refer to the fact that "I contaminated my gloves during the sterile technique."

53.     These deficiencies were brought to Plaintiff's attention at the time they occurred.

54.     On January 12, 2016, Plaintiff received a clinical grade of 2 and the words "sterile technique" are again circled on the Clinical Quick Check form.[13]

55.     Plaintiff was also given a clinical score of 2 on January 27, 2016.

56.     That was a failing score.

57.     The stated reason for the January 27, 2016, score was a critical safety violation.[14]

58.     The critical safety error was the result of Plaintiff being told she pushed a patient (a mannequin in the virtual lab) "back into bed with great force."[15]

59.     By letter dated March 30, 2016, Plaintiff was discharged from the Herkimer BOCES LPN Program for a second time.

---

[13]     Plaintiff denies this asserted fact, arguing that she actually received a score of 3 for this clinical date. (Dkt. No. 69, at ¶ 54 [Pl.'s Rule 7.1 Resp.].)  In support of this argument Plaintiff points to her deposition testimony.  However, after carefully reviewing the cited testimony, the Court finds that the score of 3 had nothing to do with the January 12, 2016, clinical; rather, that score was received for a clinical on January 26, 2016. (*See* Dkt. No. 68, Attach. 34, at 105 [referring to a page on which the top shows a passing score of 3, while below is the quick check for January 27, 2016]; Dkt. No. 66, Attach. 14, at 2 [quick check form showing a score of 3 on the top entry for January 26, 2016, and an entry for January 27, 2016, below that entry].)  Because it is clear that the cited deposition testimony was not referring to the relevant page containing the score for January 12, 2016, Plaintiff's denial is unsupported by contrary evidence and this fact is deemed admitted.

[14]     Plaintiff denies this asserted fact, arguing that she did not push the mannequin with great force as was alleged in the quick check form. (Dkt. No. 69, at ¶ 57 [Pl.'s Rule 7.1 Resp.].)  However, Plaintiff's unsupported belief that her force was justified or not excessive does not negate the fact that her clinical instructor (who is notably not one of the persons that Plaintiff alleges were unfairly discriminating against her) found that force to be concerning in terms of patient safety.  The mere fact that Plaintiff disagrees with the amount of force perceived by her instructor does not create an issue of fact.  This asserted fact is therefore deemed admitted.

[15]     *See, supra*, note 14 of this Decision and Order.

60.    Ms. Nicolette gave the March 30, 2016, letter to Plaintiff personally.

61.    The letter states that Plaintiff failed to meet clinical standards.

62.    Plaintiff acknowledged that the letter indicates that she was dismissed for failing to obtain a passing grade in the clinical setting.

63.    Plaintiff testified that, when returning to the program, she understood that she would have to obtain a score of 3 or better in order to graduate.

64.    Plaintiff testified that the standard of nursing care requires a nurse to provide care that is in the patient's best interests.

65.    Plaintiff testified that fall prevention is in the patient's best interests.

66.    Plaintiff testified that sterile technique is in the patient's best interests.

67.    Plaintiff testified that a failure by a nurse to meet patient safety needs is not in the patient's best interests.

68.    Plaintiff testified that she wanted her patients to receive medical care according to accepted standards.

69.    Plaintiff acknowledged that, in her experience, the Herkimer BOCES LPN Program was designed to teach safe and appropriate nursing care.

70.    The March 30, 2016, letter from Ms. Nicolette indicates that Plaintiff was provided with information about the appeals process at the same time.

71.    Plaintiff filed an appeal for reinstatement.

72.    BOCES superintendent Dr. Mark Vivacqua upheld Plaintiff's dismissal from the Herkimer BOCES LPN Program.

73. Dr. Vivaqua wrote that "the Adult Nursing program staff followed proper procedures detailed in the nursing handbook. In regard to [Plaintiff's] accommodation plan, I further believe that reasonable accommodations were made."[16]

74. Plaintiff testified that she agreed with Dr. Vivacqua's statement that reasonable accommodations were made.[17]

75. Dr. Vivacqua testified that, in connection with Plaintiff's 2016 appeal, he reviewed Plaintiff's student file (including the accommodation plan) as well as the nursing handbook.

76. Dr. Vivacqua also met with Plaintiff, Ms. Pywar-House, and Ms. Nicolette at a hearing concerning Plaintiff's appeal.

77. Dr. Vivacqua testified that "there were no behaviors from BOCES employees, it seemed to me, that were out of proportion and aimed at ensuring the student would fail."

78. Plaintiff's ACCES-VR counselor, Ms. Pywar-House, acted as Plaintiff's "advocate."

---

[16]     Without expressly denying this asserted fact, Plaintiff makes some assertions and provides some record citations that do not actually controvert this fact. (Dkt. No, 69, at ¶ 73 [Pl.'s Rule 7.1 Resp.].) This asserted fact is therefore deemed admitted.

[17]     Although Plaintiff denies this asserted fact, she fails to cite record evidence that actually supports her denial. (Dkt. No. 69, at ¶ 74 [Pl.'s Rule 7.1 Resp.].) This asserted fact is therefore deemed admitted.

79.     Ms. Pywar-House testified that she did not observe anything that she would be able to ascribe to discrimination by Ms. Nicolette based on Plaintiff's disability.[18]

## C.     Parties' Briefing on Defendant's Motion for Summary Judgment

### 1.     Defendant's Memorandum of Law

Generally, in its motion for summary judgment, Defendant argues that Plaintiff cannot show a triable issue of fact as to her remaining claims of disability discrimination. (Dkt. No. 66, Attach. 22, at 4-6 [Def.'s Mem. of Law].) More specifically, Defendant argues that (a) Plaintiff has failed to show how her alleged bipolar disorder resulted in her failure to meet clinical standards or in the need for accommodations, (b) the evidence establishes that Plaintiff was unable to meet standards even with the provided accommodations, and (c) the evidence of repeated safety violations establishes that Plaintiff was dismissed for her inability to meet program standards rather than because of bias against her. (*Id.* at 4-5.) Defendant also argues that Plaintiff was provided with quick checks, that her readmission in 2015 is proof that she was not being purposefully driven out of the program, and that her request for her ACCES-VR advocate to be present at all meetings between her and BOCES staff was a burdensome and impractical request that the school did not need to accept. (*Id.* at 5-6.) Finally, Defendant argues that there is no evidence of deliberate indifference to Plaintiff's complaints of bullying by other students (and that the record in fact shows that Plaintiff herself engaged in threatening behavior towards other students). (*Id.* at 6.)

---

[18]     Although Plaintiff (without expressly denying this asserted fact) responds to the asserted fact, the response does not actually controvert the asserted fact, nor does it cite any supporting record evidence. (Dkt. No. 69, at ¶ 79 [Pl.'s Rule 7.1 Resp.].) This fact is therefore deemed admitted.

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion for summary judgment, Plaintiff asserts three arguments.  (Dkt. No. 68, at 19-28 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that her bipolar affective disorder is a qualifying disability that substantially limits her major life activities; she argues that she was diagnosed with the disorder more than a decade ago, that she experiences symptoms such as mood swings, marked difficulty with social interaction, anxiety and difficulty concentrating and organizing, and that she obtains treatment in the form of prescription medication, weekly counseling, and monthly appointments with her primary care physician.  (*Id*. at 19-23.)  Plaintiff also notes that her ACCES-VR counselor recognizes her as having a disability.  (*Id.* at 23.)

Second, Plaintiff argues that Defendant knew of Plaintiff's disability, but failed to provide reasonable accommodations for it, engaging in discrimination and producing a hostile educational environment.  (*Id.* at 24-28.)  More specifically, Plaintiff argues that Defendant was aware of her bipolar disorder and agreed to provide reasonable accommodations but informed only two of her instructors of the requirement to provide daily quick checks, and that at least one of those required quick checks were provided a day late.  (*Id.* at 24.)  Plaintiff also argues that the evidence establishes that she was able to pass her clinicals when she was provided with these quick checks and that it was "hostile taunting, false accusations, and failure to provide the accommodations" that resulted in her failing her clinical requirement.  (*Id.* at 24-25.)

Third, Plaintiff argues that the Court should recognize a claim for hostile learning environment in this case (although she acknowledges that the Second Circuit has not yet recognized such a claim) based on the evidence of bullying, taunts, failure to investigate

incidents before putting the fault on Plaintiff, singling Plaintiff out in front of classmates, denying her requests, and implying that Plaintiff is a potential child abductor. (*Id.* at 26.)

### 3. Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant asserts three arguments. (Dkt. No. 72, Attach. 1, at 4-9 [Def.'s Reply Mem. of Law].) First, Defendant notes that only the discrimination claims are still at issue in this case, not the retaliation or hostile-learning-environment claims, which were dismissed previously by this Court, and therefore Plaintiff's arguments related to those dismissed claims are irrelevant. (*Id.* at 4-5.)

Second, Defendant argues that Plaintiff has failed to raise a triable issue of fact with regard to her discrimination claims because (a) she received all of her clinical quick checks in a timely manner with the exception of the final one for her Little Falls Hospital clinical rotation, (b) the evidence shows she failed a clinical on January 11, 2016, then earned a probationary pass upon repeating it, but was still on probation as of March 30, 2016, when she was dismissed, and (c) the evidence shows multiple failing daily clinical scores due to critical patient safety errors regardless of whether she passed single days within the clinical rotation. (*Id.* at 6-7.) Defendant also argues that Plaintiff has failed to explain how her disability in particular impacted her ability to complete the clinical program. (*Id.* at 7-8.)

Third, and finally, Defendant argues that Plaintiff's response to Defendant's statement of material facts and her separate statement of material facts in dispute contain improper conclusions of law. (*Id.* at 8-9.)

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[19]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.  In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).[20]

---

[19]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[20]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[21] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[22]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[21]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[22]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

Rule 7.1(b)(3).[23]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.  ANALYSIS

After carefully considering whether Plaintiff has met her burden to establish a *prima facie* case of disability discrimination, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 66, Attach. 22, at 4-6 [Def.'s Mem. of Law]; Dkt. No. 72, Attach. 1, at 6-7 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"In the education context, the ADA and Rehabilitation Act require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program."  *Dean v. Univ. at Buffalo*

---

[23]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

*Sch. of Medicine and Biomedical Scis.*, 804 F.3d 178, 186-87 (2d Cir. 2015). To establish a *prima facie* case for failure to provide a reasonable accommodation, a plaintiff must show "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to [the ADA or the Rehabilitation Act]; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability.'" *Dean*, 804 F.3d at 187. Additionally, "in the education context, a plaintiff alleging a failure to accommodate a disability bears the burdens of both production and persuasion as to the existence of some accommodation that would allow the plaintiff to meet the essential requirements of the service, program, or activity at issue," after which the burden shifts to the defendant "to persuade the fact-finder that the proposed accommodation is unreasonable" because it either (a) imposes an "undue hardship on the operation of defendant's service, program, or activity," or (b) requires a "fundamental or substantial modification to the nature of its academic program or standards." *Id.* at 190. Lastly, although reasonable accommodations are required, an institution "does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *Id.* at 187.

Although Defendant argues that it has never received conclusive medical proof of Plaintiff's bipolar disorder, it nonetheless appears to have treated her as having that disability, particularly by agreeing to provide accommodations to her; Ms. Kline acknowledged that, based on her understanding, an individual must have some type of disability in order to qualify for services with ACCES-VR. (Dkt. No. 68, Attach. 30, at 15-16.) The parties also do not appear to dispute that the essential issue before this Court is whether Plaintiff was denied the opportunity to participate in and benefit from the Herkimer BOCES LPN Program, or was otherwise discriminated against, *because* of her bipolar disorder.

As part of her readmission to the Herkimer BOCES LPN Program in January 2016, Defendant agreed to provide Plaintiff with the following accommodations: (1) Plaintiff would received "Classroom Quick Check" and "Clinical Quick Check Level II" forms on days she has interaction with the clinical instructor; (2) ACCES-VR would be notified of "any concerns as they arise as well as be given the opportunity to be present via phone conference or in person"; (3) communications between the school and Plaintiff would remain related to learning and issues directly impacting her educational outcomes; (4) Defendant would provide weekly updates to ACCES-VR by email related to Plaintiff's academic and professional progress; and (5) reasonable accommodations would be developed throughout as needed with the assistance of ACCES-VR. (Dkt. No. 66, Attach. 11, at 2.) Of note, these accommodations are relevant only to Plaintiff's clinicals as of January 2016, when she began her first courses after being readmitted to the Herkimer BOCES LPN Program. (*Id.*)

The record shows that Plaintiff first attended a virtual lab clinical in January 2016 with instructor Ms. Propopienko. In her deposition, Ms. Nicolette testified that she instructed Ms. Propopienko to provide Plaintiff with quick checks. (Dkt. No. 68, Attach. 31, at 13-14 [Nicolette Dep.].) The record contains quick check forms from this clinical dated January 11, 2016 (score of 2), January 12, 2016 (score of 2), January 26, 2016 (score of 3), and January 27, 2016 (score of 2), all of which were signed by Plaintiff on those same dates. (Dkt. No. 66, Attach. 14, at 2-3.) Plaintiff acknowledged at her deposition that she had in fact signed these quick check sheets and that all the deficiencies in performance outlined in those quick check sheets were brought to her attention at the time they were noticed. (Dkt. No. 68, Attach. 34, at 101-02, 108 [Pl.'s Dep.].) Additionally, Plaintiff states in her opposition memorandum that she

"admits that Propopienko gave her the clinical quick checks for the virtual lab clinical sessions." (Dkt. No. 68, at 24 [Pl.'s Opp'n Mem. of Law].)  There is therefore no genuine issue of fact as to whether Defendant provided Plaintiff's accommodation for quick checks as to this clinical: it did so.[24]

Plaintiff next attended an observational clinical at Saint Luke's Hospital with instructor Ms. Steele on January 30, 2016.  Ms. Steele testified that she was never informed of Plaintiff's need for quick checks or other accommodations and that she never provided Plaintiff any quick check forms.  (Dkt. No. 68, Attach. 32, at 40-41 [Steele Dep.].)  Ms. Nicolette admitted that she did not tell Ms. Steele to do quick checks because that observational clinical was not graded, testifying that it was her understanding that, "if it was a *graded* clinical, . . . she needed to have [quick checks] done every day and given to [Plaintiff]."  (Dkt. No. 68, Attach. 31, at 10-15, 35 [Nicolette Dep.] [emphasis added].)  Plaintiff argues that her accommodations required her instructors to provide a clinical quick check for any day that she had an interaction with a

---

[24]     The Court rejects Plaintiff's argument that her ability to pass this clinical with provision of her accommodations establishes that she was able to meet the requirements of the clinicals when provided her granted accommodations.  (Dkt. No. 68, at 24 [Pl.'s Opp'n Mem. of Law].)  The evidence of record shows that she primarily obtained daily scores of 2 due to noted critical safety violations, and that she received only a probationary pass in this clinical; as discussed above, it is undisputed that anything below a final grade of 3 is failing.  Additionally, Plaintiff's argument that Ms. Nicolette told her she had passed the virtual clinic based on doing a successful skills video is not supported by the evidence.  Rather, Ms. Nicolette testified that the skills tape was a prerequisite to continuing with her clinical because she had demonstrated insufficient skills and required remediation.  (Dkt. No. 68, Attach. 31, at 43 [Nicolette Dep.].)  The written sheet indicating the instructions for the skills tape and noting Plaintiff's passing mark on that skills tape does not contradict that testimony, but rather merely states that the video "must be complete and proper to get a probationary or full pass."  (Dkt. No. 68, Attach. 20, at 1.)  Of note, the record shows that Plaintiff continued in the virtual lab following her pass on the skills tape, which further supports a finding that it was merely a requirement to qualify for the virtual lab, not a substitute for a graded clinical.  (Dkt. No. 66, Attach. 14, at 2.)

clinical instructor, whether or not that clinical was graded. (Dkt. No. 68, at 24 [Pl.'s Opp'n Mem. of Law].) The signed letter regarding her accommodations simply states that Plaintiff would receive quick check forms "on the days she has interaction with the clinical instructor." (Dkt. No. 66, Attach. 11, at 2.)

Under the circumstances, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff was entitled to quick checks for any sessions with Ms. Steele because it is not clear whether Defendant agreed to provide that accommodation only for graded clinicals (as Ms. Nicolette believed) or for all clinicals where Plaintiff interacted with an instructor (as Plaintiff believed). Although an argument can be made that, because the accommodation was intended to help Plaintiff remedy mistakes in her actions before being provided with her final grade in a given clinical session, such accommodation would serve no purpose in a clinical setting where there was no grade at stake. However, because the quick checks informed Plaintiff of mistakes, including critical safety errors, providing her with such feedback even for a non-graded clinical could be pertinent to her graded clinicals if identifying those mistakes prevented her from performing them in future graded clinicals. Because the evidence is conflicting as to whether Plaintiff's accommodation pertained to all clinical sessions or graded clinical sessions only, the Court is unable to determine whether Plaintiff was provided with her agreed-upon quick check accommodation for this clinical.

Based on concerns about Plaintiff's behavior at the Saint Luke's clinical, Plaintiff was placed in a virtual lab for her next clinical rather than being permitted to attend the Head Start clinical. Ms. Nicolette testified that the Head Start clinical was not graded, but rather another observational rotation, and she indicated in an email that, because Plaintiff had attended the

Head Start clinical the previous year, that attendance would meet her requirement for this year. (Dkt. No. 68, Attach. 31, at 28 [Nicolette Dep.]; Dkt. No. 68, Attach. 6, at 1; Dkt. No. 68, Attach. 8, at 1.)

Lastly, Plaintiff attended a graded clinical at Little Falls Hospital in March 2016, with instructor Ms. Lynch. (Dkt. No. 68, Attach. 16, at 2-3.) Both parties acknowledge that Ms. Lynch failed to provide Plaintiff with the quick check on the final day of the clinical, providing it to her instead the following morning. (Dkt. No. 66, Attach. 22, at 3 [Def.'s Mem. of Law]; Dkt. No. 6, at 14-15 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 72, Attach. 1, at 6 [Def.'s Reply Mem. of Law].) However, Defendant argues that Ms. Lynch was late in providing only this last quick check form, while Plaintiff argues that Ms. Lynch's notes over the course of Plaintiff's participation in the clinical rotation suggest that Ms. Lynch provided a quick check form on only a single day of the multi-day clinical. (Dkt. No. 66, Attach. 22, at 3 [Def.'s Mem. of Law]; Dkt. No. 68, at 15 [Pl.'s Opp'n Mem. of Law].) The record contains a copy of a quick check form with assessments for March 15 and 22, 2016; however, only the form from March 15, 2016, is signed by Plaintiff (the form from March 22, 2016, is cut off before the signature line, so it is impossible to tell whether Plaintiff also signed for this date). (Dkt. No. 66, Attach. 12, at 2.) In Ms. Lynch's notes related to the course of Plaintiff's work in the clinical session, March 15, 2016, is the only date on which Ms. Lynch specifically notes that she gave Plaintiff a quick check sheet. (Dkt. No. 68, Attach. 16, at 2-3.) Additionally, Plaintiff's testimony does not support Defendant's argument that Plaintiff admitted that she had received all the quick checks from Ms. Lynch other than the one on the last day that was provided late; Plaintiff's testimony, taken in context, does not clearly suggest that interpretation. (Dkt. No. 68, Attach. 34, at 110

[Pl.'s Dep.].)  Instead, Plaintiff's testimony appears to indicate only that she had regularly received her quick checks until attending the Little Falls Hospital clinical rotation.[25]  However, Plaintiff also later testified that she "had all her checklists" and used them to calculate her potential final grade, after which she determined she would be below a passing score and requested to be able to attend another clinical section for a day to raise her grade.  (*Id.* at 112-14.)  Given the conflicting evidence and either parties' failure to provide copies of quick check forms signed by Plaintiff for any day other than March 15, 2016, the Court cannot determine on the record whether Plaintiff was provided with her accommodation for this clinical rotation or to what extent.

Despite the above questions of fact as to whether the granted accommodations were actually provided on a consistent basis, the Court finds that Plaintiff has nonetheless not met her burden to show that she was capable of satisfactorily meeting the essential requirements of the Herkimer BOCES LPN Program, even with reasonable accommodations, given the existence of evidence that she committed multiple critical safety violations during her clinical sessions.  In a letter to Ms. Pywar-House dated January 4, 2016 (before Plaintiff had begun attending clinical sessions with her accommodations), Ms. Nicolette provided an overview of the grading system,

---

[25]	In her deposition, Plaintiff was asked the following questions and gave the following answers:

> Q: Okay.  So, up until the Little Falls Hospital quick checks, had you been getting them on a regular basis at the time you were going through the clinicals"
> A: Yes.
> Q: So it was just the last one that you weren't–you feel you weren't given timely?
> A: Yes.

(Dkt. No. 68, Attach. 34, at 110 [Pl.'s Dep.].)  The Court notes that it is ambiguous as to whether "last one" in the second question above is intended to refer to her last clinical as a whole or the last day of that clinical.

noting in particular that an overall score of 2 to 2.9 was considered a probationary pass, that a probationary pass must be followed by a pass to remain in the program, and that "critical safetys <u>can</u> result in dismissal." (Dkt. No. 68, Attach. 13, at 1 [emphasis in original].) As already discussed above, Plaintiff's scores in her first virtual lab resulted in a probationary pass. Her only other graded clinical was the Little Falls Hospital clinical in March 2016, during which it is undisputed that Plaintiff committed two critical safety errors: failure to observe droplet precautions on March 15, 2016, and failure to place the call bell in reach of her patient on March 22, 2016. (Dkt. No. 68, Attach. 16, at 2-3.) Additionally, although she gave Plaintiff passing scores on multiple days of the clinical session, Ms. Lynch repeatedly noted deficiencies in Plaintiff's performance even on these days, including poor documentation skills for patient assessments, needing to be redirected to her responsibilities, difficulties working as a team with others, and needing to improve time management and organization. (*Id.*) The record therefore shows that, not only did Plaintiff receive a cumulative failing score for this clinical rotation despite some passing days (while already on probation from her previous graded clinical rotation), but she committed two critical safety errors during this clinical rotation. The program handbook states that "[a]ny action or lack of action by the student in the clinical setting which in the judgment of the instructor, places the patient in physical or psychological jeopardy may be cause for dismissal from the program." (Dkt. No. 66, Attach. 6, at 25.) Therefore, based on Herkimer BOCES' written policy, those critical safety violations could constitute sufficient grounds for dismissing Plaintiff from the program, notwithstanding her failing score.

Of course, this is the same clinical rotation that Plaintiff alleges she was not provided her quick check forms, and therefore it must be determined whether any alleged failure to provide

the granted accommodations negatively impacted Plaintiff's ability to perform the essential requirements of the clinical portion of the Herkimer BOCES LPN Program. However, the Court is not convinced that the evidence in the record as a whole establishes that provision of the formal quick checks (if in fact not done) would have prevented Plaintiff from committing these very same critical safety violations. In particular, Ms. Lynch's notes related to Plaintiff's performance indicate that (a) on March 15, 2016, the day on which she failed to follow proper droplet precautions, Ms. Lynch spoke to her directly about her failure to wear a mask and gloves despite signs indicating the need to take those precautions and instructed her about her priorities and duties in such a situation, and (b) on March 22, 2016, Ms. Lynch spoke to Plaintiff twice during the clinical session about Plaintiff's failures to ensure that her patient's bed alarm was activated and the call bell was within reach. (Dkt. No. 68, Attach. 16, at 2-3.) This evidence establishes that Plaintiff was directly spoken to and informed about the critical safety errors at the time they were committed, whether or not a quick check form was provided on both days. Additionally, Ms. Lynch's notes establish that Plaintiff committed the second critical safety error on March 22, 2016, despite the fact she had been explicitly provided a quick check form after the first critical safety error on March 15, 2016. (*Id.*) Such evidence suggests that receipt of quick check forms would not have inevitably prevented Plaintiff from performing these critical safety errors during her clinical sessions, particularly as the rest of Ms. Lynch's notes do not suggest that providing a quick check form on preceding days would have corrected or prevented the specific behaviors or failings that resulted in the two critical safety violations. This finding is also supported by the fact that, although Plaintiff received a probationary pass in the January 2016 virtual lab, she was noted to have committed a critical safety violation during that clinical

27

rotation, specifically being too rough with the mannequin patient.[26]  (Dkt. No. 66, Attach. 14, at

2.)  This critical safety violation notably occurred despite the fact that it is undisputed that

Plaintiff was receiving her quick check forms during that clinical rotation.

Because the Herkimer BOCES LPN Program handbook specifically states that critical

safety violations (which place a patient in jeopardy) can constitute grounds for dismissal,

Plaintiff's multiple critical safety violations show that Plaintiff could not meet the essential

requirements of the clinical portion of the Herkimer BOCES LPN Program, even if she were

provided with her granted accommodations.  Of note, in a May 3, 2016, email related to

Plaintiff's appeal of her dismissal, Mr. Vivacqua specifically states that "[y]our failure in the

program was due to critical safety errors which you made, and not due to BOCES' lack of

attention to accommodating your disability."  (Dkt. No. 66, Attach. 16, at 2.)  The evidence

simply would not allow a reasonable fact finder to determine that Plaintiff would have been able

to avoid committing these critical safety errors had she simply been provided with sufficient

reasonable accommodations, and therefore Plaintiff has not shown that there is a genuine dispute

of material fact as to whether she was able to meet the essential requirements of the Herkimer

BOCES LPN Program, or that any failure to provide these accommodations in a more consistent

matter prevented her from meaningfully accessing and participating in the Herkimer BOCES

LPN Program.  *See Adams v. Rochester Gen. Hosp.*, 977 F. Supp. 226, 234-35 (W.D.N.Y. 1997)

---

[26]     Plaintiff disputes that she was not too rough with the mannequin, stating that she
did not believe that she pushed the mannequin as hard as Ms. Propopienko asserted; however,
Plaintiff's unsupported belief is not sufficient to create any issue of fact as to the validity of this
critical safety error.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 852 (2d Cir. 2013)
("[The plaintiff's] subjective disagreement with her employer's assessment of her performance is
not sufficient to demonstrate retaliatory intent and defeat summary judgment.").

(finding that the fact that the plaintiff's difficulty with repairing equipment according to accepted practice and procedures, for which he was disciplined multiple times, might have stemmed from his alleged mental health condition did not excuse his failure to perform the essential functions of his job).

The Court notes that the record contains evidence that Plaintiff had passed a clinical rotation with a score of 4 in November 2014, which she points to as proof that she was able to meet the essential requirements of the program.  (Dkt. No. 68, Attach. 28, at 1-2.)  However, as Ms. Nicolette testified, this was the geriatric clinical, which "is very basic," while the clinical sessions she attended after the geriatric clinical were of an increasing intensity in terms of the skills and level of performance required.  (Dkt. No. 68, Attach. 31, at 49, 55-57 [Nicolette Dep.].)  Because this passed clinical was testing basic skills, while the clinical sessions in 2016 tested more involved skills, the fact that Plaintiff passed the geriatric clinical does not serve as proof from which a reasonable factfinder could conclude that she possessed the ability to pass the higher-level (yet still required) clinical rotations.  In particular, Plaintiff has not pointed to any additional reasonable accommodation that would have prevented her from making the critical safety errors that occurred during her clinical sessions.  *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) ("The plaintiff bears the burden of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions.").

Plaintiff additionally argues that Defendant failed to comply with the granted accommodation for having Ms. Pywar-House present (either in person or via phone) for conversations between Plaintiff and Defendant's staff.  However, Plaintiff points to only one

specific instance in which this accommodation was not complied with: a meeting between her, Ms. Nicolette, and Ms. Propopienko regarding Plaintiff's need to do a skills video in order to continue with her virtual lab clinical session.  (Dkt. No. 68, Attach. 34, at 102 [Pl.'s Dep.].)  The letter outlining Plaintiff's accommodations states that "ACCES-VR will be notified of any concerns as they arise as well as be given the opportunity to be present via phone conference or in person."  (Dkt. No. 68, Attach. 2, at 1.)  Based on the wording of this letter, there was no absolute requirement that Ms. Pywar-House be present in some form at every meeting, only that she be given the opportunity to be present.  Plaintiff has presented no evidence that Ms. Nicolette or Ms. Propopienko failed to offer Ms. Pywar-House the opportunity to participate in this meeting, nor that Ms. Pywar-House was prevented from participating in any other relevant meetings.  The Court consequently finds that Plaintiff has not shown that she was denied this particular accommodation.[27]  More importantly, Plaintiff has not provided any evidence as to how complying with this accommodation in a more thorough way would have prevented her from committing the critical safety errors that resulted in her failing clinical score and ultimate dismissal from the Herkimer BOCES LPN Program.

As to Plaintiff's arguments that Defendant unlawfully denied her requests for additional accommodations, namely access to a peer tutor for clinical sessions and the ability to join another clinical section for a day when the last day of her own clinical section was cancelled by the instructor, those arguments are not persuasive.  As to the request for a peer tutor, Ms. Nicolette testified in her deposition that the LPN program did not provide peer tutors because

---

[27]      Additionally, the Court notes that Ms. Pywar-House testified that Defendant provided her with weekly emails about Plaintiff's performance, satisfying the fourth granted accommodation.  (Dkt. No. 68, Attach. 29, at 21, 27 [Pywar-House Dep.].)

there were concerns that learning from or being assisted by a fellow student without instructor supervision would raise the possibility of the peer tutor teaching inaccurate or unsafe practices, which in turn would endanger the safety of the patients; Ms. Nicolette indicated that, rather than receiving a tutor, students could receive more direction from the instructor, and that "[t]he clinical instructor gave [Plaintiff] a lot of assistance is my understanding." (Dkt. No. 68, Attach. 31, at 56-58 [Nicolette Dep].)  In addition to the patient safety concerns that would compromise the standards of the Herkimer BOCES LPN Program, the availability of the clinical instructors to assist Plaintiff during the clinical sessions appears to reasonably address her concern about the need for extra assistance; as discussed above, an educational institution is not required to provide accommodations in the specific form demanded by a student so long as the provided accommodation reasonably addresses the needs of the student's disability.  *Dean*, 804 F.3d at 187.  As to the request for an additional day of clinical experience in order to obtain a passing grade, Plaintiff has failed to connect such accommodation with her alleged disability, i.e., she has failed to argue how her bipolar disorder specifically required her to be allowed an extra day of clinical compared to the other students in her clinical section, or how denial of this extra day constituted an exclusion from participation in (or the benefits of) the program by reason of her disability.  Instead, Plaintiff argues that she required this extra day simply because her cumulative scores from the other days of that clinical had not been sufficient to produce a passing score, in large part due to her commission of two critical safety errors on two separate days.  (Dkt. No. 68, Attach. 34, at 112-116 [Pl.'s Dep.].)  Although Defendant was required to provide reasonable accommodations to put Plaintiff on a level playing field with her non-disabled peers and grant her meaningful access to the Herkimer BOCES LPN Program, it was

not required to do everything possible to ensure that she passed her courses, including allowing her the opportunity to complete an additional day of clinical that other students in her clinical section were not afforded merely because Plaintiff was failing that clinical and wanted to try to raise her grade.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218 (2d Cir. 2001) ("Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons."); *Buckley v. Consolidated Edison Co.*, 155 F.3d 150, 156 (2d Cir. 1998) (stating that the ADA does not require an employer to make accommodations for needs unrelated to the recognized disability).  As a result, the Court does not find that the denial of these other requests for accommodations constitutes a denial of reasonable accommodations; additionally, as already discussed, Plaintiff has not shown that any of the asserted accommodations would have allowed her to successfully meet the essential clinical requirements of the Herkimer BOCES LPN Program.

In sum, Plaintiff has failed to establish a *prima facie* case of disability discrimination because the evidence does not support a reasonable finding that Plaintiff could meet the essential requirements of the Herkimer BOCES LPN Program even with the provided reasonable accommodations.  Nor does the evidence support a reasonable finding that she was denied the ability to have meaningful access to the Herkimer BOCES LPN Program on the basis of her bipolar disorder.  As a result, Plaintiff's disability discrimination claims must be dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 66) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 39) is **DISMISSED**.

Dated: February 12, 2019
      Syracuse, NY

                            Hon. Glenn T. Suddaby
                            Chief U.S. District Judge